DISSETTE ET AL. *v*. DISSETTE.

[No. 26,457.   Filed July 2, 1935.]

568

*Roemler, Chamberlin & Rust,* and *Isaac Carter,* for appellants.

*Samuel D. Miller,* and *Sidney S. Miller,* for appellee.

HUGHES, J.—This was a divorce action in which the appellee was plaintiff and the appellant, Joseph C. Dissette was defendant. The appellants other than Joseph C. Dissette were made parties defendant because of certain property in which appellant Joseph C. Dissette was interested.

A divorce was granted to the appellee, Margaret P. Dissette, from the appellant, Joseph C. Dissette, and the custody of three children given to the appellee. The appellee was given $51,421 alimony, $200 per month for the support, maintenance, and education of the three children, and $2,000 incurred for expenses and attorneys' fees.

The errors relied upon for reversal are that the court erred in overruling the motions of each of appellants to modify the judgment and decree, and in overruling the motion of each of the appellants for a new trial.

The plaintiff (appellee) and defendants (appellants) stipulated and agreed to the following facts:

"The plaintiff and defendant, Joseph C. Dissette, are husband and wife. They were duly married on the 16th day of August, 1917, and, with the exception of six months during the year 1925, lived together as husband and wife until the 5th day of September, 1931, when they separated, and since.

which time they have not lived or cohabited together.

"In the fall of 1925, plaintiff separated from defendant and thereafter employed attorneys to bring an action for a divorce from defendant; that before such suit was filed, a written agreement, dated January 2, 1926, looking to a reconciliation between plaintiff and defendant, was entered into, and a copy thereof is hereto attached, made a part hereof and marked Exhibit 'A.'

"The plaintiff and defendant, Joseph C. Dissette, have as the fruits of their marriage three minor children, two boys and one girl, whose names, dates of birth and present ages are as follows:

| Name | Date of Birth Approximate Age |
|------|-------------------------------|
| James I. Dissette, II, | May 30, 1918, 13 years, 8 months |
| Marjorie Dissette, | September 6, 1920, 11 years, 4 months |
| Jos. C. Dissette, Jr., | July 7, 1922, 9 years, 6 months |

"The plaintiff has been compelled to and has employed attorneys to bring and prosecute this suit, and she is without sufficient means wherewith to pay the necessary expenses incident to this suit and to compensate such attorneys for services which have already been and will necessarily hereafter be rendered by them in that behalf; that said attorneys are the firm of Miller and Miller, of Indianapolis, and that they have not received any compensation for their services up to this time.

"The plaintiff does not own any property, other than her interest in the real estate hereinafter referred to, a small automobile, her personal effects and a small amount of furniture of little value, some small stock holdings amounting in the aggregate to not to exceed $200.00, and the surrender value of certain life insurance policies assigned to her, pursuant to Exhibit A, of approximately $2,-400.00, and is without means, except as herein stated, with which to support herself and said children, and has no profession, business or other means of livelihood.

"That plaintiff and said defendant, Joseph C. Dissette, hold in their joint names certain real estate and the improvements thereon located at Spring Lake, Ottawa county, Michigan, consisting

of a substantial tract of land, a frame summer cottage and out-buildings; that said real estate and the improvements thereon were acquired after the marriage of the plaintiff and said defendant; that a substantial sum of money, to-wit: $3,250.00 belonging to the plaintiff in her sole right went into the purchase of said property; that said real estate consists of two lots which were purchased in 1928 for the aggregate amount of approximately $3,-300.00; that said real estate and improvements thereon cost approximately $25,140.00, and that said real estate and improvements were recently appraised by a competent appraiser at the instance of defendant at $15,130.00. Said appraisement is introduced herewith; that said cottage is furnished, and that the furniture and equipment therein contained, together with other furniture owned by said defendant, and located in Indianapolis, Indiana, which cost approximately $3,960.00, are of the value of $1580.00.

"That James I. Dissette is the father of the defendant, Joseph C. Dissette; that on the 19th day of January, 1921, the said James I. Dissette and Joseph C. Dissette entered into a certain contract bearing that date, whereby said James I. Dissette sold to Joseph C. Dissette, in consideration of love and affection and the sum of one dollar ($1.00), and subject to certain conditions therein set out, 60% of the total outstanding common capital stock of the Indianapolis Wire Bound Box Company, an Indiana corporation engaged in manufacturing wire bound boxes, whose business is located in the city of Indianapolis; a copy of said contract is attached hereto, made a part hereof and marked Exhibit 'B'; that subsequently, on, to-wit: the 18th day of August, 1925, said Joseph C. Dissette and said James I. Dissette entered into a certain contract to amend section two of said contract of the 19th of January, 1921, a copy of which is hereto attached, made a part hereof and marked 'Exhibit C.'

"That the par value of the stock of said Wire Bound Box Company is $50.00 per share.

"That subsequently, on, to-wit: the 20th day of March, 1929, another certain contract was entered into between James I. Dissette and Joseph C. Dis-

sette, as parties of the first part, and the defendants herein, DeWitt W. Brown and L. C. Bradford, as parties of the second part, whereby said Joseph C. Dissette agreed to sell and sold 1200 shares of said stock for the sum of $200,000.00 and James I. Dissette sold 795 shares of said stock for the sum of $198,750.00 to said Brown and Bradford, subject to conditions therein set forth; a copy of said contract is hereto attached, made a part hereof and marked Exhibit 'D.'

"That the book value of the stock of said Wire Bound Box Company at the present time is $67.72 per share.

"That since said contract of March 20, 1929, was made, payments have been made on account of the principal of the purchase price to Joseph C. Dissette of $28,000.00, and to James I. Dissette of $56,-000.00, leaving a balance of $172,000.00 payable to Joseph C. Dissette under said contract as provided therein.

"That since said contract of March 20, 1929, was entered into, at the respective semi-annual interest paying dates the interest then due has been fully paid to both James I. Dissette and Joseph C. Dissette; that in the year 1932, if the earnings of the Indianapolis Wire Bound Box Company warrant the declaration of dividends on its outstanding stock amounting in the aggregate to $172,000, there will become due to Joseph C. Dissette, on to-wit: March 20, 1932, as interest on the unpaid purchase price of said stock the sum of $4300.00 and on the 20th of September, 1932, a like sum of $4,300.00, or a total of $8,600.00 for the year; that the business of said Indianapolis Wire Bound Box Company is such as to warrant the belief that dividends will be declared by said Indianapolis Wire Bound Box Company sufficient to enable said Brown and Bradford to pay the interest which will become payable under said contract, Exhibit 'D' during the year 1932, but there is no certainty that dividends will be paid by said Indianapolis Wire Bound Box Company during the year 1932 in an amount sufficient to enable said Brown and Bradford to make any payments upon the principal of the purchase price of said stock during said year either to James I. Dissette

or to the defendant, Joseph C. Dissette; that payments of principal and interest under said contract for future years are wholly uncertain, being dependent entirely on the success or failure of said corporation to earn sufficient net profits from which, when declared as dividends said Brown and Bradford will be able to pay the same.

"That said Joseph C. Dissette has no property other than the real estate, furniture and equipment and his interest in the Indianapolis Wire Bound Box Company contract hereinabove referred to, except his personal effects, an automobile, 50 shares of Canadian Marconi Company stock of the value of about $50.00, and the surrender value, amounting to about $380.00 on the policies of life insurance which he has taken out in favor of the three children of the plaintiff and said defendant, Joseph C. Dissette, referred to in said Exhibit 'A.' "

Exhibit D referred to in the stipulation of facts, was the contract entered into between James I. Dissette and Joseph C. Dissette, parties of the first part, and DeWitt W. Brown and L. C. Bradford, parties of the second part, and the parts of said contract applicable here are as follows:

"That the parties of the first part are the owners of the total common capital stock of the INDIANAPOLIS WIRE BOUND BOX COMPANY, an Indiana corporation, having 2000 shares of the par value of $50.00 each, the respective holdings being 1200 shares standing in the name of Joseph C. Dissette, and 800 shares standing in the name of James I. Dissette; that Joseph C. Dissette, a party of the first part, is desirous of selling to parties of the second part the 1200 shares now standing in his name, and James I. Dissette, likewise a party of the first part, is desirous of selling to the parties of the second part 795 shares standing in his name.

"That parties of the second part, who have been and are in the employ of the INDIANAPOLIS WIRE BOUND BOX COMPANY are desirous of becoming associated together and of buying and becoming owners of said 1997 shares of common

capital stock; now therefore it is mutually understood and agreed:

"(a)   That parties of the first part shall sell, and do hereby sell to the parties of the second part 1995 shares of the common stock of the INDIANAPOLIS WIRE BOUND BOX COMPANY at the price and upon the terms hereinafter specified; that these shares shall pass to the parties of the second part in the proportions of 1600 shares to Brown and 395 shares to Bradford.

"(b)   That the price to be paid for said shares of common capital stock of the INDIANAPOLIS WIRE BOUND BOX COMPANY shall be $200,-000.00 for the 1200 shares standing in the name of Joseph C. Dissette, and $198,750.00 for the 795 shares standing in the name of James I. Dissette. In payment of same, the parties of the second part, shall give their several promissory notes payable ninety days after demand, bearing five per cent interest from date—interest to be paid semi-annually, and both principal and interest to be paid out of surplus earnings—and shall attach to said notes as collateral security all of said shares, all of said shares to remain pledged thereto until all of said notes have been fully paid; all of which said parties of the second part expressly agree to this provision, each for himself, and for each other, and for their heirs and legal assigns, waiving any right to demand possession of any portion of said pledged shares until all are paid for. The parties of the second part bind themselves to apply to payment of principal and interest of said notes all dividends which may hereafter be declared at once and as soon as paid, and to continue so doing until all notes have been paid; that it is expressly understood and agreed that each shall be entitled to enjoy his proportion of any division of surplus earnings as soon as his notes have been fully paid, regardless of status of the others; that the parties of the second part shall have the right to apply hereon in multiples of one thousand dollars at any interest paying period any other funds of which they may be possessed. Any withdrawals from the surplus funds of the INDIANAPOLIS WIRE BOUND BOX COMPANY from and after March 20, 1929, shall be

considered as advance payments upon these promissory notes.

"(c)  It is further understood and agreed between the parties of the first part, in the event of default and failure of the parties of the second part to fully meet their obligations under this contract, and as the result of such failure the property herein sought to be conveyed shall revert to the possession of the parties of the first part, such reversion shall automatically and fully restore and re-establish the respective ownership and rights of the parties of the first part to the status existing between said first parties prior to the sale under this contract. However, it is expressly understood and agreed that should one of the parties of the second part default and fail to fulfill the terms of this contract, so far as same apply to him, the remaining party or parties of the second part not in default shall not be adversely affected thereby, and his or their rights hereunder shall continue as though no default had occurred.

"(d)  It is mutually understood and agreed that, since it is the intent and purpose of this agreement to permit the parties of the second part to pay off their several promissory notes and interest on same out of the surplus earnings of the INDIANAPOLIS WIRE BOUND BOX COMPANY, and since the parties of the second part shall be the active managers of the business and affairs of the INDIANAPOLIS WIRE BOUND BOX COMPANY, said parties of the second part hereby bind themselves, to diligently and economically conduct the company's affairs, to the end that the notes given the parties of the first part may be fully paid as soon as possible; that parties of the second part further bind themselves, while any of said notes remain unpaid, not to expend in new machinery or other betterments a total sum in excess of twenty thousand dollars in any one year unless by written consent of both parties of the first part.

"(e)  It is mutually understood and agreed that the nature of the contract is such that several years may be required in which to fully comply with same; that if the parties of the second part continue diligently to prosecute the business of the

INDIANAPOLIS WIRE BOUND BOX COMPANY and to faithfully apply the surplus earnings of said corporation as herein stipulated to the extinguishment of their several promissory notes, then the parties of the first part hereby bind themselves for a period of ten years from dates of said promissory notes to not make demand for payment upon parties of the second part and to not declare them in default.

"(f) That the parties of the second part shall declare dividends out of surplus funds whenever same can be done with safety to the credit and financial standing of the INDIANAPOLIS WIRE BOUND BOX COMPANY; that at no time shall over $30,000.00 cash in excess of accounts and bills payable be kept in the treasury except in cases of emergency and then only with the knowledge and consent of parties of the first part. . . .

"(k) That all payments made on promissory notes by parties of the second part to parties of the first part shall be applied to the ratio of 66-2/3% to James and 33-1/3% to Joseph C. Dissette."

Exhibit A, referred to in the stipulation of facts, was the contract of reconciliation entered into by said parties on January 2, 1926. Paragraph 4 of said contract is as follows:

"*Four:* It is further agreed between the parties that, if said first party shall, either in letter or spirit, violate the terms of this agreement, then and thereupon, upon the demand of the second party, the first party shall convey or pay to the second party, or to whomsoever she may designate, by proper instrument in writing, an amount of property or money equal to one-third of the then net value of the first party's entire property, real, personal and mixed, (exclusive of said life insurance), which amount shall in no event be less than the aggregate value of $26,000.00, whatever may be the then value of first party's said property."

The motion of the appellants to modify the judgment and decree are very lengthy and cover several pages, and to set them out in full would unduly extend this

opinion. We think, however, to fully understand and comprehend the judgment and decree, it is best to set it out in full. It is as follows:

"IT IS THEREFORE ORDERED BY THE COURT, that the defendant Joseph C. Dissettee pay to the plaintiff, on or before the first day of April, 1932, for her expenses, including the fees of her attorneys, the sum of $2,000.00;

"IT IS FURTHER ORDERED BY THE COURT, that the care, custody, and control of said three children be and they hereby are granted to the plaintiff until they shall have severally reached the age of twenty-one (21) years, or until the further order of this Court; that the defendant shall have the right to see and visit said children at such times and places as shall be mutually convenient to plaintiff and defendant and shall not interfere with the education or welfare of said children.

"IT IS FURTHER ORDERED BY THE COURT, that the defendant Joseph C. Dissette pay to the plaintiff for the support, maintenance and education of said children the sum of $200.00, payable to the plaintiff at her then address, each and every calendar month, beginning February 1, 1932, subject to the further order of this Court:

"AND IT IS NOW CONSIDERED, ADJUDGED AND DECREED BY THE COURT, as follows, to-wit:

" (a) That the plaintiff have and recover of the defendant Joseph C. Dissette the sum of $51,421.00 as alimony, which shall draw interest at the rate of 6 per cent per annum from and after the date of the entry of this decree until the same is fully paid, and the costs of this suit, all payable without relief from valuation or appraisement laws of the State of Indiana; that, the defendant Joseph C. Dissette being unable to give sufficient surety to the approval of the Court, within the time provided by law, to secure the payment of said amount of alimony in installments, with interest, the said Joseph C. Dissette is given the right to pay said amount in installments as follows, to-wit:

"Forty per cent (40%) of any amount which said Joseph C. Dissette shall be entitled to receive

from said Indianapolis Wire Bound Box Company, DeWitt W. Brown and Luther C. Bradford, or either of them, on account of the transactions hereinbefore set out in respect of the Indianapolis Wire Bound Box Company, on or before the 25th day of March and the 25th day of September in each year, beginning March 25, 1932, until the full amount of said judgment for alimony has been paid;

"(b)    That in the event any payment herein required to be made by the defendant Joseph C. Dissette shall not be made within fifteen days after the same shall be due according to the provisions of this decree, then, at the election of the plaintiff, the entire unpaid balance of said judgment for alimony shall become immediately due and payable, together with all accrued interest thereon, and such sum shall then draw interest at six per cent until paid;

"(c)    That in the event of the death of the defendant Joseph C. Dissette before all of the payments herein required to be made by him have been made, all unpaid installments required to be paid by said Joseph C. Dissette shall immediately become due and payable, and the plaintiff, or, if she then be dead, her heirs, executors, administrators, or assigns, shall have the right to file a claim against the estate of said defendant Joseph C. Dissette for the full amount of all installments and interest remaining unpaid at the time of said defendant's death; and the plaintiff shall not be compelled, nor shall her heirs, executors, administrators, or assigns be compelled, to accept the commuted value of the installments unpaid at the date of the death of said defendant Joseph C. Dissette but shall be entitled to receive the full amount then due, with interest, out of said estate;

"(d)    In the event of the death of the plaintiff before the completion of the payments herein required to be made by said defendant Joseph C. Dissette, then such payments shall after the date of such death, be payable and be made to the heirs, executors, administrators or assigns of the plaintiff;

"(e)    That the defendant Joseph C. Dissette may anticipate any payments herein required to be

made by the payment of larger amounts than are herein named at any of the times herein fixed for the payment of such amounts;

"IT IS FURTHER ORDERED AND ADJUDGED BY THE COURT that defendant Joseph C. Dissette be and he is hereby restrained and enjoined from disposing of the said promissory notes, or the whole or any part thereof or any interest therein, or any of the shares of stock in said defendant Indianapolis Wire Bound Box Company, or the whole or any part of the interest of said Joseph C. Dissette under said contract of March 20, 1929, except as hereinafter provided;

"IT IS FURTHER ORDERED AND ADJUDGED BY THE COURT that the defendants Indianapolis Wire Bound Box Company, DeWitt W. Brown and Luther C. Bradford be and each of them is hereby restrained and enjoined from making any payments of any amounts of money to said defendant Joseph C. Dissette, or to anyone on his behalf, on account of the principal or interest of said promissory notes given for the purchase of the stock of said Joseph C. Dissette in said Indianapolis Wire Bound Box Company or on account of the interest of said Joseph C. Dissette, in said contract of March 20, 1929, except such amounts as said defendant Joseph C. Dissette may be entitled to receive over and above the amounts herein required to be paid to the plaintiff;

"IT IS FURTHER ORDERED AND ADJUDGED BY THE COURT, that the payment of said judgment be secured in the following manner, to-wit:

"The injunction hereinbefore granted as to the defendant Joseph C. Dissette and the defendants Indianapolis Wire Bound Box Company, DeWitt W. Brown and Luther C. Bradford shall continue and remain in full force and effect until said judgment, with interest is fully paid and satisfied; and, whenever a payment shall become due from the defendants Indianapolis Wire Bound Box Company, Brown and Bradford, or any of them to said defendant, Joseph C. Dissette under said promissory notes or the contract of March 20, 1929, then forty per centum (40%) of the amount due to said Dis-

sette of principal and interest, or either of them, shall be paid to the plaintiff, or her assigns, and the amount thereof shall be credited as payment upon said judgment and the amount of said judgment shall thereupon be satisfied to the extent of such payment; and such payments shall continue on the same percentage basis until the full amount of said judgment, with interest, (unless theretofore paid by said defendant Joseph C. Dissette) shall have been fully paid.

"IT IS FURTHER ORDERED AND ADJUDGED BY THE COURT, that in the event at any period upon which payments are to be made, as in this decree provided, the said defendant Joseph C. Dissette shall be in default in the payments hereinbefore ordered to be made by him to the plaintiff for the support, maintenance and education of said children, then the amount that said defendant Joseph C. Dissette is so in default, with interest thereon at the rate of six per cent (6%) per annum, shall be paid by said Indianapolis Wire Bound Box Company, Brown or Bradford to the plaintiff, in addition to any other funds herein required to be paid to the plaintiff, and charged to the account of said defendant Joseph C. Dissette.

"And now all of the foregoing matters are finally ordered, considered, adjudged and decreed by the Court and the Court retains jurisdiction of this cause for the purpose of making such further orders as may be met and proper in respect to the care, education, custody and control of said children and the allowance to the plaintiff for their support, maintenance and education and the security herein ordered for the payment of the judgment herein rendered."

The appellant, Joseph C. Dissette, assigns as reasons for a new trial the following:

1. The decision of the court is contrary to law.

2. The decision of the court is not sustained by sufficient evidence.

3. The court erred in overruling the said defendant's motion to modify the judgment or decree rendered in this case.

4. Because the court erred and abused its discretion in each of the respects hereinafter named, as follows:

Under this heading the allowance of $2,000 for expenses, the $200 for the support of the children and the $51,421 for alimony are complained of.

The appellants, other than Joseph C. Dissette, assign as reasons for a new trial the following:

1. The decision of the court is contrary to law.

2. The decision of the court is not sustained by sufficient evidence.

3. The court erred in overruling the motion of each of said defendants to modify the decree in said cause.

The appellants state in their brief that "the things we complain of are the things decreed by the court with reference to the amount of alimony awarded to the plaintiff and certain things decreed in connection with the awarding of that alimony." No complaint is made that the plaintiff was entitled to a divorce, the custody of the children and an allowance for the support and maintenance of them. Neither is there any complaint that the plaintiff was entitled to a decree for alimony and for an allowance for her expenses, including attorney's fees.

The first reason assigned by the appellant to modify the judgment and decree was because the allowance of $2,000 for her expense, including attorney's fee, was too large. It was agreed by stipulation between the parties that the attorney's fees for plaintiff's attorney were to be fixed by the court in its discretion without the introduction of evidence, and that plaintiff was to have an allowance of $100 for other expenses incident to the litigation. We cannot say that the court, as shown by the record, abused its discretion in this matter. By agreement of the parties, the allowance was left to the discretion of the court

and there is nothing in the record to show that this discretion was abused. We are content with this part of the decree.

It was next moved by the appellant to modify the judgment and decree as to the allowance of $200 per month for the support of the three children and making the payments to begin on February 1, 1932. It is asserted that the payment of $200 is too large and should be reduced at least $50. The only evidence in the case as to what allowance should have been made was given by the appellant and appellee. The appellee testified that it was necessary to have at least $240 to support them while the appellant testified that it should not be more than $150. The evidence shows that all three of the children are of school age, and that one of them is not normal and will require great care and attention. The court, after hearing all of the evidence, concluded that an allowance of $200 per month should be made. We cannot say that the allowance, under the evidence, is unjust, nor that the court abused its discretion and judgment in allowing said amount.

We see no valid objection to the order making the payments to begin on February 1, 1932. The judgment for divorce was entered on January 23, 1932, and the custody and control of the children was given to the appellee, and the matter of support was taken under advisement; and, on March 25, 1932, an amended decree was entered fixing the amount. We think the court had the right to fix the amount and the time when the payments were to begin at the time the amended decree was made. The fact that the decree binds appellant to pay on the first day of each month would not place him in contempt of court, as suggested by appellant, if in fact he did not actually have the

money to pay, and was unable to secure the same.

In the defendant's motion to modify the judgment and decree, the court was asked to modify that part giving the plaintiff $51,421 alimony and fixing the payment in installments. It is insisted that under the evidence the amount of the alimony as fixed is too large.

Section 3-1217, Burns 1933, §926, Baldwin's 1934, provides:

> "The court shall make such decree for alimony, in all cases contemplated by this act, as the circumstances of the case shall render just and proper; and such decree for alimony, heretofore made or hereafter made, shall be valid against the husband, whether asked for in the petition or given by the judge on default."

Under the repeated decisions of this court, the amount allowed to the wife, under this section of the statute, is a matter of sound discretion upon the part of the trial court, and this court will not interpose, upon appeal, except where there is an abuse of this discretion. *Yost* v. *Yost* (1895), 141 Ind. 584, 41 N. E. 11.

> "It is also a general rule for the guidance of the trial court, though not mandatory, that in awarding alimony to an innocent and injured wife, as a part of a divorce decree, the wife should receive such sum as would leave her in as good condition as would have been her condition as a surviving wife upon her husband's death." *Glick* v. *Glick* (1927), 86 Ind. App. 593, 595, 158 N. E. 33; *Graft* v. *Graft* (1881), 76 Ind. 136.

In fixing the alimony in this case, the court evidently intended to fix it in an amount approximately equal to one-third of appellant's estate as found by the court. The appellant contends that the value of Dissette's interest in the stock of the box company did not exceed $60,000. It is shown by the evidence that the appellant received $200,000 for his stock

in the company; that $28,000 had been paid on this amount, leaving $172,000 due appellant at the time of the trial, and the same drawing 5% interest, or $8,600 per year. Under the sale contract the appellant is to receive $166 per share, and the amount is to be paid out of the proceeds of the business over a period of ten years from March 20, 1929. James I. Dissette, father of the appellant, is to receive $198,750 for 795 shares or $250 per share. It is shown from the evidence that the Indianapolis Wire Bound Box Company made the following net profits in the following years:

| | | |
|---|---|---|
| 1928— | $46,963.16—or | 46.96 per cent on the capital |
| 1929— | 64,691.91—or | 64.69 per cent on the capital |
| 1930— | 19,058.61—or | 19.06 per cent on the capital |
| 1931— | 19,284.22—or | 19.28 per cent on the capital |

For 4 years—
$149,997.90 — or 149.99 per cent on the capital

This makes an average annual net profit for the four years of $37,500. It is seen that the net profits for the years 1928 and 1929 were $111,655.07, while for the years 1930 and 1931 the net profits were $38,086.83, or about 1/3 of the amount for 1928 and 1929.

The balance due on the notes for the purchase price of the stock at the time of the trial was $172,000; one-half of the appraised value of the Michigan real estate was $15,170; and the value of the household effects was $1,580, making in all the sum of $188,750. The court did not take the notes for the purchase price of the stock at their face value. They were found by the court to be of the value of $145,119.99. Just how this value was found, we do not know. Two witnesses testified as to the value of the balance due on the purchase money notes. William P. Flynn, vice-president of the Indiana National Bank, testified that it might be worth

from $25,000 to $50,000. He said he was thinking of the value in speculative value, and that he did not think an absolute value could be placed upon it. He also testified that there are two common ways of determining the value of what is called a local or unlisted stock,— stock not listed on the Stock Exchange; that the most common way is to value it on the net current assets that might be reasonably realized upon by liquidation; and that the other way is by multiplication of the average earnings for a period of five years, and that five times those earnings might be a fair value of the stock.

The other witness who testified as to the value was George W. Snyder, vice-president of the Security Trust Company. He stated that over a period of ten years the value could be estimated at ten times the earnings per share. In placing a value on the unpaid notes, the court did not follow the exact reasoning of either witness, and as stated above we do not know the method by which the value was reached. The par value of the stock was $50 per share, and the book value of the stock at the time of the trial as shown by the evidence was $67.72 per share. Neither of these values was used in fixing the present value. The value as fixed by the appellant at the time of the sale was $166.66 2/3 per share, and on the basis as fixed by the court the value would be about $140 per share. It must be conceded that there was no way for the lower court to know the exact value of the notes, and there is no way for this court to know. It was for the lower court to use its best judgment as to the value based upon all the facts and evidence before it. It arrived at a value of $145,-119.99. We cannot say there was not sufficient evidence for this finding. When to this amount is added the one-half value ($7,585) of the real estate in Michigan and the value ($1,580) of the household effects, the total

value of appellant's property is $154,284. The alimony given is $51,421, or one-third of the total amount. The appellant contends that it should not have been more than $20,000. This contention, however, is in direct contradiction to the agreement entered into between the parties on January 2, 1926, wherein it was agreed that, if the agreement was violated either in letter or spirit by the appellant, he would convey to the appellee one-third of the net value of his property, and in any event an amount not less than $26,000.

It is further contended by appellant that the court erred in refusing to modify the judgment and decree relative to the provision for paying the alimony in installments. The appellant being unable to give sufficient surety to the approval of the court within the time provided by law to secure the payment of said amount of alimony in installments with interest, the appellant was given the right to pay said amount in installments as follows:

"Forty per cent (40%) of any amount which said Joseph C. Dissette shall be entitled to receive from said Indianapolis Wire Bound Box Company, DeWitt W. Brown, and Luther C. Bradford, or either of them, on account of the transactions hereinbefore set out in respect of the Indianapolis Wire Bound Box Company, on or before March 25, and September 25 of each year, beginning March 25, 1932, until the full amount of said judgment for alimony has been paid."

Section 3-1218, Burns 1933, §932, Baldwin's 1934, provides:

"The decree for alimony to the wife shall be for a sum in gross, and not for annual payments; but the court, in its discretion, may give a reasonable time for the payment thereof, by installments, on sufficient surety being given. And in all cases where alimony has been thus given by installments or may hereafter be given, and the security required shall not be given within 30 days from the date of

such decree, then the whole amount of such alimony shall become due and payable the same as if no such installments had been mentioned in the decree."

And section 3-1217, Burns 1933, *supra*, provides:

"The court shall make such decree for alimony, in all cases contemplated by this act, as the circumstances of the case shall render just and proper. . . ."

Under these provisions relating to alimony the court is given broad discretion to do what is just and proper under the circumstances. It was shown by the evidence that appellant was unable to give any security. The provision made for the payments was more in favor of appellant than against him. It would have been to the advantage of the appellee if the alimony could have been paid in full, but this was impossible, and, if execution had been issued and the notes sold, the condition of the sale contract would have still been effective. And, as the evidence shows, it would have been practically impossible to have sold the notes for anything near their value. This was realized by the court, and under the court's broad discretionary power, we think the decree as to the payments was proper and within the law. If the court did not have this power, then the judgment and decree as to alimony in the instant case would have been futile.

Complaint is further made by the appellant in overruling the motion to modify the decree wherein it is provided that, if the appellant does not make payment as provided within fifteen days after the same shall become due according to the provision of the decree, then at the election of appellee, the unpaid balance of the judgment for alimony shall become due and payable with interest. The appellant insists that this provision makes him liable to pay at once, though nothing is paid by Brown and Bradford,

and it is not certain that said parties will pay or be able to pay at any six months period the appellant any money. We see nothing wrong with this provision. The court in making the decree realized the contingent conditions of the payment of the notes and specifically provided that the 40% payment should be of any amount which appellant would be entitled to receive from the company, Brown and Bradford. The whole amount of alimony depends on what appellant realizes from the notes for he had no other property from which it can be collected.

As to the fifth reason for modification, we see no merit. The court did nothing more than the law provides. It was, perhaps, a useless provision, but not harmful to appellant. And the same may be said as to the sixth reason to modify the decree.

The seventh reason to modify the judgment relates to that part of the decree which restrained and enjoined the appellant from disposing of the promissory notes or any part thereof, or any shares of stock in the company under the contract of March 20, 1929. This is another provision for the protection of the decree for alimony which was within the power of the court to make, and is often exercised.

The eighth reason to modify relates to that part of the decree providing that the injunction theretofore granted against the company, Brown and Bradford, shall remain in full force and effect until the judgment is paid and satisfied; and that when a payment on said notes become due, 40% of the same shall be paid to the plaintiff (appellee) or her assigns and the amount shall be credited as a payment on the judgment. We see no merit to this contention. This provision was meant and intended as a protection of the decree, which the court has the right to make.

The last reason assigned to modify relates to that provision relative to the support and maintenance of the children. It provides that, if the appellant is in default in payments for the support of the children, then the amount in default with interest should be paid by the company, Brown and Bradford, to the plaintiff, in addition to any other funds required to be paid to the plaintiff, and charged to the account of Joseph C. Dissette. This part of the decree is merely a protection for the payment of the support money and surely one within the power of the court to make.

The appellants, other than Dissette, also filed their motion to modify the judgment and decree as to them. We think it is unnecessary to discuss this motion in full. It is sufficiently disposed of in the discussion of the motion of appellant, Dissette, except, perhaps, that part which they contend imposes upon them the burden of knowing whether Dissette (appellant) is in default in the payment of support money. This burden is not upon them. The burden is upon appellee to notify the appellants if there is a default and, until this is done, they are not responsible for anything relating to the order for support money.

It is contended by appellee that no question is raised by the motion for a new trial filed by any of the defendants for the reason that it was filed on March 30, 1932, sixty days after the decision. This contention cannot prevail. The amended judgment and decree was entered March 25, 1932, and the motion for a new trial was filed within five days.

We think, however, the only grounds properly assigned by appellants for a new trial are that the decision of the court is contrary to law, and that it is not sustained by sufficient evidence.

To a very large extent, the reasons given why the

decision is contrary to law were presented by appellant in his motion to modify the judgment; and, if the lower court was correct in its ruling on the motion to modify the decree, then it follows that the decision is not contrary to law.

It is contended by appellant that the decision is contrary to law in the following respects: As to enjoining the appellant from disposing of his property; and as to that part of the decree which provides that 40% of the money paid by Brown and Bradford under the contract of March 20, 1929, shall be by them paid to the plaintiff.

We do not think the court erred in enjoining the appellant from disposing of his property. As heretofore stated, the court in a divorce proceeding has large discretionary powers as to the custody of the children, and in fixing the alimony and its terms, as is just and proper. The court also has the right to protect its own decree. A court having jurisdiction to render a judgment or decree has authority and jurisdiction to make such orders and issue such writs as may be necessary and essential to carry the judgment or decree into effect and render it binding and effective. 7 R. C. L., p. 1034.

Whether or not the appellee can ever recover the amount given her as alimony depends upon uncertain conditions. The appellant could not give security to insure her of the payments; it would have been impossible to have sold the notes for their value upon execution, and, if sold for a small part of their value, it would have been against the interest of the appellant as well as the appellee. It is contended by appellant that a permanent injunction was not asked for in the complaint. We do not think this is necessary in a divorce proceeding where alimony is granted.

The court may grant alimony even though it is not asked for in the complaint, and, when granted, the court may use its equitable powers to protect its decree granting the alimony. The court is confined, in granting relief to the prayer in the complaint, only in cases where an answer is filed; in all others, it may grant any relief consistent with the facts alleged. Section 412, Burns Ann. St. 1926, §2-1057, Burns 1933, §162, Baldwin's 1934.

In the instant case, the court heard the evidence, and in its judgment determined that under the facts and circumstances of the case, it was necessary to enjoin the appellant from disposing of his property, and the proceeds to be derived from payments on the notes in question.

If the appellant could sell the notes and secure enough for them to pay the amount of alimony allowed, there can be little doubt that appellee would join him in the sale, and the court would give permission for the sale. The appellant lays great stress upon the fact that the decree makes no provision for the giving of security. It was shown by the evidence that no security could be given, and this, doubtless, was the reason the court enjoined the appellant from disposing of his property, and thus protected it from being sold on execution at a great sacrifice to both parties.

The court had the right to fix the payment of the alimony in installments, and it fixed the installments at forty per cent of the payments appellant would receive under the contract. As the amount of the payments was contingent and uncertain, it was the only practical way the court could fix. The appellant asserts that:

"When the defendant failed to secure the payment of installments provided by the court, the entire amount of the alimony became due and pay-

able. It was a personal judgment, belonging to the plaintiff and was collectible on execution and in no other way."

The appellant is here pleading for the appellee, but she is not complaining, and, as appellant is not harmed, he has no right to complain.

Complaint is also made of that provision of the decree which provides that the alimony is made payable without relief from valuation or appraisement laws. The appellant cites two cases upon this proposition; *Fletcher* v. *Holmes* (1865), 25 Ind. 458; and *Whitehall* v. *Crawford et al.* (1871), 37 Ind. 147. Neither one of these is in point. It must be remembered that the decree did not provide for a sale on execution or order of sale. On the contrary, the payment of the alimony is to be made from the amount received from the sales contract.

The further contention is made that the decision is not sustained by sufficient evidence. This question was discussed in the motion to modify. As heretofore stated, there is no complaint made as to the granting of the divorce, and as to the custody of the children. The quarrel is around the amount of alimony granted, and the amount given to support, maintain, and educate the children. There is evidence to support the decree of the court as to these matters, and, unless there is a clear abuse shown, such a decree cannot be disturbed. There is no settled rule which can be invoked to control the discretion of the court in granting alimony and support for the children. As said in the case of *Boggs* v. *Boggs* (1910), 45 Ind. App. 397, 398, 90 N. E. 1040:

"It is well established that the amount of alimony to be awarded in divorce proceedings is in the sound discretion of the trial court, and the appellate tribunal will not review that decision unless an abuse of such discretion has been shown." (Many cases cited.)

It was also said in the above case that (p. 399):

"It has been held that alimony, when given to an innocent and injured wife, should be in a proportion to leave her at least as well off pecuniarily in non-cohabitation as she would be in cohabitation."

We think the decision as to the appellant, Dissette, was not contrary to law, and that it was sustained by sufficient evidence, and the motion for a new trial was properly overruled.

We also think the motion for a new trial of the other appellants was properly overruled.

Judgment affirmed.