FERGUSON *v.* FERGUSON.

[No. 18,561. Filed April 18, 1955. Rehearing denied May 26, 1955. Transfer dismissed August 4, 1955.]

598

Howard R. Hooper and A. Chesterfield Terence, of Indianapolis, for appellant.

Milton E. Craig, of Indianapolis, for appellee.

BOWEN, J.—This is an appeal from a judgment for divorce and alimony awarded to the appellee on her cross-complaint in a divorce suit filed by the appellant.

Issues were joined on appellant's second paragraph of complaint and appellee's cross-complaint which alleged appellant to be guilty of cruel and inhuman treatment. The trial court found for the appellee on her cross-complaint that she was entitled to an absolute divorce from appellant, and awarded her alimony in the sum of $25,000.00 and $5,000.00 attorney's fees.

The record herein presents a very unusual set of circumstances. The marriage of the parties was the culmination of a romance by correspondence which

was initiated by the appellee, Lilo Rentsch, by the placing of an ad by appellee and another girl in the magazine "Ebony," which contained the following statements:

"WANTED: TWO HUSBANDS

"You'll be probably very surprised to receive a letter from two German girls. The explanation is very simple. We were just reading your article, 'Eligible Men,' in the EBONY of November. Perhaps it sounds strange to you that we like to meet Negroes. We met through our work so many different Americans and found out that Negroes have much more heart, more sense of human beings. We had many talks about the problems of your race and got the opinion that color means nothing. Only the personality counts.

"You perhaps can understand that there are many doubts for us in having a future in Germany, even in Europe. It is so very hard for a girl to make a living here. So many people are jobless. We are young and hoping for a better future. Our desire is to get married, to build a family, to raise children and be a good housewife and companion, living a happy life.

"Both of us were engaged during the wartime to German officers who got killed in Russia. Often we had chances to get married, but we never could find what we wanted. German men changed a lot. They are much different now than they were before.

"Perhaps EBONY can help us to find the right husbands. We are 27 years old. Friedel is an actress and Lilo a secretary. Both of us are well educated.

> Friedel Schneider
> Lilo Rentsch
> Wiesbaden-Biebrich, Germany"

As a result of this ad the appellant, who resided in Indianapolis, Indiana, started a correspondence with the appellee and wrote the appellee numerous love let-

ters in which he wooed her with an ardor, as shown by the exhibits in this cause, which was maximal. In such letters he professed his undying love for her, his willingness and ability to keep her in a wealthy style, and told her repeatedly of his financial success and his ability as a businessman and financier. He forwarded affidavits attesting to his wealth to the United States immigration authorities to induce them to permit appellee to come to this country. These affidavits and the accompanying appraisals, and the income tax returns, showed the appellant to be worth in excess of $150,000.00. The record shows that he furnished money to her from time to time, including the money to emigrate to this country. Upon her arrival in this country, and the meeting of the parties, apparently appellant's ardor cooled, and upon the appellee's arrival and the night they were married, the appellee slept at the home of Doctor Kabell, a friend of the appellant, and the appellant slept at the Theresa Hotel. Thereupon they returned to the appellant's home in Indianapolis at 324 West Maple Road, where they occupied separate rooms. However, the appellee testified she visited his bedroom on occasions. She testified that he kept a gun and a hatchet in his room, that she was afraid to occupy it with him, and that he tried to have unnatural relations with her. The parties were married on the 14th day of March, 1952, and separated on the 24th day of February, 1953.

There is substantial evidence of probative value to have justified the lower court in granting a divorce to appellee on the grounds of cruel and inhuman treatment.

By the assignment of errors the appellant has questioned the amount of alimony awarded to appellee. The appellant admitted in the affidavits which he made in order to induce appellee to come to this country that he

had an annual net income of $10,000.00 and personal property of the approximate value of $30,000.00, and that he had real estate on "conditional sales contracts" of the approximate value of $85,000.00. These affidavits were made in 1951 and at a time before he married appellee. At the time of the divorce and the trial of this cause the record shows that appellant, who had two children, had lost and had forfeited much of the property which he was purchasing on real estate contracts, and that at the time of the trial the extent of appellant's property, as shown by the evidence and the reasonable inferences to be drawn therefrom, would not exceed the amount of $10,000.00. It appeared that certain property which was included in the affidavits in 1951 had been taken over by the Fidelity Trust Company on forfeitures, and had been resold to a brother of the appellant, but no claim or suggestion appears that such transactions were improper or irregular in any manner whatsoever.

The question which we are called upon to determine is whether or not the trial court abused its discretion in the award of $25,000.00 alimony to the appellee herein. Our statute, §3-1217, Burns' 1946 Replacement, provides that the court shall make such decree for alimony in all cases contemplated by this act, as the circumstances of the case shall render just and proper. The Supreme Court, in interpreting this statute, *Glasscock* v. *Glasscock* (1884), 94 Ind. 163, 164, stated:

> "It is evident that the word 'shall' as used in the statute, merely relates to the amount of alimony that may be allowed in cases where it is proper to allow alimony. The statute does not mean, as contended by the appellant, that the court shall, in every action for divorce, allow alimony. The adjusting of alimony is not yet controlled by defi-

nite rules. The determination of each case must depend upon its own circumstances."

It is well settled in this state that the amount of alimony to be awarded in each case must be dependent upon the circumstances of such case. The case law has established a pattern under our statute to be used as a guide in the determination of alimony, by which the trial court may take into consideration the financial condition of the husband, the source of any property owned by him, his income, ability to earn money, the conduct of the parties toward each other, and the wife's separate estate. It has been stated:

> "It is also a general rule for the guidance of the trial court, though not mandatory, that in awarding alimony to an innocent and injured wife, as a part of a divorce decree, the wife should receive such sum as would leave her in as good condition as would have been her condition as a surviving wife upon her husband's death."

*Glick* v. *Glick* (1927), 86 Ind. App. 593, 159 N. E. 33, and authorities therein cited. *Stutsman* v. *Stutsman* (1902), 30 Ind. App. 645, 66 N. E. 908; *Miller* v. *Miller* (1929), 90 Ind. App. 359, 168 N. E. 881; *Dissette* v. *Dissette* (1935), 208 Ind. 567, 196 N. E. 684; *Temme* v. *Temme* (1937), 103 Ind. App. 569, 9 N. E. 2d 111; *Ralston* v. *Ralston* (1942), 111 Ind. App. 570, 41 N. E. 2d 817; *Adams* v. *Adams* (1947), 117 Ind. App. 335, 69 N. E. 2d 632. Such pattern does not consist of any hard and fast rules of law and the amount awarded must always depend upon the facts and circumstances in each particular case, and is a matter which is largely within the discretion of the trial court. *Radabaugh* v. *Radabaugh* (1941), 109 Ind. App. 350, 35 N. E. 2d 114; *Ringenberg* v. *Ringenberg*

(1942), 110 Ind. App. 290, 38 N. E. 2d 870. In *McFarlan* v. *Fowler Bank City Trust Co.* (1938), 214 Ind. 10, at page 14, 12 N. E. 2d 752, the Supreme Court, in defining what constitutes an abuse of judicial discretion, says:

"An abuse of discretion is an erroneous conclusion and judgment, one clearly against the logic and effect of the facts and circumstances before the court, or the reasonable, probable, and actual deductions to be drawn therefrom. The exercise of a lower court's discretion is not reviewable; it is only the alleged abuse of that power which is reviewable on appeal."

It seems apparent from an examination of the whole record in the instant case, by reason of the amount of alimony which was awarded, that the trial court was guided largely by a consideration of the representations of great financial worth which the appellant made prior to his marriage, and that his determination of alimony was not based upon appellant's circumstances at the time of the trial of this cause. It has been held by this court that conversations between parties before marriage and before entering into an antenuptial agreement as to how they are going to handle their business affairs after marriage are in no way relevant either as to the question of divorce or the question of alimony. *Ringenberg* v. *Ringenberg, supra.*

While it may be said that appellant induced appellee to come to this country by reason of a claim of considerable wealth, to use such basis for the determination of alimony under the unusual circumstances of this case, would savor more of a claim for breach of an antenuptial promise to continue the marriage contract, and in view of the declared public policy of this state which forbids suits for breach of promise, such con-

siderations should not outweigh the positive facts of the appellant's circumstances against whom alimony is sought by appellee at the time of the divorce and alimony judgment. Alimony allowances would reach astronomical figures in a great many cases were they to be based upon the self-appraisal and representations of an ardent suitor during courtship. Courts must be realistic and view alimony from the standpoint of the circumstances of the parties at the time the divorce is granted.

The appellee in the instant case brought no property into the marriage relationship, nor does the evidence show that she contributed anything to the acquisition of property during the time the parties lived together as husband and wife, not even to the extent of mutually helping appellant in the normal duties of a wife during much of the short period of the marriage. The evidence bears the unmistakable imprint of a lack of conjugal relations during much of the period the parties were married, for which the court may have properly held the appellant at fault. However, such marriage, which existed for less than a year was, for the most part, a marriage in name only.

Considering the entire record before us in the light of the rules of law above set out, we are constrained to hold that the trial court abused its discretion in awarding the appellee the sum of $25,000 as alimony, and the sum of $5,000.00 as attorney's fees.

That part of the judgment of the trial court in granting the divorce is affirmed, but insofar as such judgment awards the appellee the sum of $25,000.00 as alimony and $5,000.00 as attorney fees, it is reversed with instructions to grant a new trial to be confined to the issue of alimony and attorney's fees exclusively,

and for further proceedings consistent with this opinion.

Royse, P. J., dissents with opinion.

## DISSENTING OPINION

ROYSE, P. J.—I cannot agree with the opinion and that part of the decision of the majority reversing the award of alimony and attorney fees.

In the first place, I believe there is serious question as to whether appellant's brief has presented a question to this court. Be that as it may, it seems to me the majority opinion has violated one of the cardinal rules of appellate procedure, that this court will not weigh the evidence.

The evidence in the record herein could reasonably lead to the inference that at the time the trial of this cause appellant was a man of great wealth, who had, for several years prior to the trial, for the purpose of evading tax and other obligations, placed his property in the names of others, including his brother.

The majority opinion recognizes that the allowance of alimony is a matter left to the sound discretion of the trial court. In my opinion the record and brief herein do not show there has been an abuse of the trial court's discretion in this case.

The rather lengthy discussion in the majority opinion of matters not necessary to a determination of the question decided, causes me to feel their action is motivated more by indignation at the unconventional manner in which the parties met and by a prejudice toward miscegenatious marriages than by a consideration of the legal principles which should be our guide in this case.