JACK L. REED *v.* HELEN W. REED.

[No. 2-674A150. Filed December 30, 1975.]

*Sidney E. McClellan,* of Muncie, for appellant.

*Peterson, Ervin.& Barry,* of Hartford City, for appellee.

## CASE SUMMARY

BUCHANAN, J.—Defendant-Appellant Jack L. Reed (Jack) appeals from a divorce decree[1] granted to Plaintiff-Appellee Helen W. Reed (Helen), claiming the trial court abused its discretion in its division of the property of the parties.

We affirm.

## FACTS

The facts and evidence most favorable to Helen and in support of the trial court's judgment are:

Jack and Helen were married July 25, 1952, and three children were born of their marriage (Pamela, Brent, and Bradley).

At the time of their marriage both Jack and Helen were employed by the Indiana & Michigan Electric Company, at Muncie, Indiana. Within the first year of their marriage both parties left this employment and moved to a farm in Delaware County, where they devoted their time and energies to their own farming operation. By 1973, the Reeds were cultivating over 600 acres (mostly rented), of which they owned 30 acres.

Marriage problems began in early 1972 when Jack became involved with another woman. In the Fall of 1972, Jack told Helen another woman was taking her place. And, before Christmas of that year he informed her he would like a divorce so that he could "come and go as he pleased without any questions asked".

Jack sometimes lost his temper, called Helen unrepeatable names, and used physical force against her. The parties eventually became separated and Jack moved to an apartment in Muncie.

On February 16, 1973, Helen filed for divorce, but in May the parties effected a reconciliation, Jack agreeing to

---

1. This divorce action was commenced prior to the effective date of the so-called "no-fault" divorce Act, IC 1971, 31-1-11.5-1 et seq. (Burns Supp. 1975) [Acts 1973, P.L. 297].

give up the other woman. However, two or three days later, Helen found Jack and the other woman together in a field on their farm. Disputes continued during this period, and finally Jack said, "it wasn't going to work".

The parties again separated in June, 1973, and Jack returned to live in his Muncie apartment. On August 2, 1973, Helen again filed for divorce.

During their marriage, Jack and Helen incurred these joint debts:

### JOINT DEBTS

| | |
|---|---:|
| Farm residence | $ 16,753.64 |
| 30 acre farm with improvements | 17,748.91 |
| Farm machinery | 66,900.00 |
| Joint debt to Helen's mother | 14,655.20 |
| Total debts | $116,057.75 |

They accumulated these joint assets:

### JOINT ASSETS

| | |
|---|---:|
| Residence | $ 38,500.00 |
| 7 Subdivision lots | 26,350.00 |
| 30 acre farm with improvements | 64,500.00 |
| Crops on hand (already harvested) | 26,101.31 |
| Farm machinery | 52,400.00 |
| Household goods | 2,409.00 |
| Cattle | 7,500.00 |
| 1970 Buick Electra | 2,075.00 |
| 1970 Buick Skylark | 2,075.00 |
| Total assets | $221,910.31 |

### RECAPITULATION

| | |
|---|---:|
| Total assets | $221,910.31 |
| Total debts | 116,057.75 |
| Net joint estate | $105,852.56 |

The parties also jointly owned a 1971, F35 truck, with grain bed and hoist, and a 1970 Ford ¾ ton pickup truck (the trucks) which Jack was awarded (no value stated).

There was further evidence that Jack would harvest $19,000 worth of corn in 1973 (with accompanying farm expenses).

Jack individually possessed the following assets:

(1) A 1963 school bus, valued at _____$ 1,200.00
(2) A checking account _____ 2,250.00
(3) A life insurance policy with cash value ___ 3,200.00
(4) A coin collection valued at _____ 350.00
(5) A gun collection valued at _____ 1,000.00

Jack incurred various debts totaling $13,000.00.

As a school bus driver, Jack earned $6000-$7000 per year. He also received $125 per month rent from the house located on the 30 acre farm.

Helen became employed by Merchants National Bank of Muncie on September 2, 1973, and had a take home pay of $69 per week. She owned certain assets, which came to her principally as the result of the death of her mother (Geraldine Harper) on February 25, 1972.

### HELEN'S ASSETS

Estate checking account _____$ 4,788.11
Randolph County Farm valued (at
   an average $375.00 per acre) _____ 44,250.00
Savings account _____ 6,735.46
Cash _____$ 2,200.00

Total assets _____..$57,973.57

On February 13, 1974, a property division was made by the trial court. Helen received the following:

| PROPERTY | VALUE |
|---|---|
| Household Goods _____$ | 2,409.00 |
| 1970 Buick Electra _____ | 2,075.00 |
| Residence _____ | 38,500.00 |
| 7 Subdivision lots _____ | 26,350.00 |
| Total assets _____$ | 69,334.00 |

Subject to:

| DEBT | VALUE |
|---|---|
| Residence (mortgage) _____$ | 16,753.64 |
| Total Net Assets (exclusive of her inheritance) | $ 52,580.36 |

Jack Reed received the following:

| PROPERTY | VALUE |
|---|---|
| Farm Machinery | $ 52,400.00 |
| Crops on hand (corn to be harvested in 1973) | 19,000.00 |
| Cattle | 7,500.00 |
| 1970 Buick Skylark | 2,075.00 |
| 1963 School bus | 1,200.00 |
| 30 acre farm with improvements | 64,500.00 |
| Total assets | $146,675.00 |

(Jack also was awarded the trucks accumulated during the marriage (no value stated).)

Subject to:

| DEBTS | VALUE |
|---|---|
| Farm Machinery | $ 66,093.00 |
| Mortgage on 30 acre farm | 17,748.91 |
| Debt to Massey-Ferguson for combine | 5,908.00 |
| Debt on silo | 1,266.22 |
| One-half joint debt to the estate of Helen's mother [$7,327.60] minus a credit to Jack of $2,459.49 to "equalize" the values of the property received by the plaintiff [Helen] and defendant [Jack]. | 4,868.11 |
| Total debts | $ 95,884.24 |
| Total net assets to Jack | $ 50,790.76 |

The trial court found that Jack had no interest in Helen's inheritance (approximately $58,000):

That the defendant [Jack] has no interest in the property inherited or to be inherited by the plaintiff [Helen] and that the same shall remain her absolute property.

The judgment was silent as to various assets in Jack's possession, which he apparently retained, totaling approximately $34,400 [ensilage ($1500), gun collection ($1000), coin collection ($350), cash value of life insurance ($3200), checking account ($2250), and crops already harvested (approximately $26,100 according to the parties' stipulations)].

## ISSUE[2]

Did the trial court abuse its discretion in dividing the the property of the parties?

The essence of Jack's contention is that the trial court abused its discretion by awarding Helen all her own property and one half of the remaining property whether owned jointly or by him.

Helen's reply is: "The decision of the court was supported by the evidence. There was no abuse of discretion."

## DECISION

CONCLUSION—It is our opinion that viewing all the evidence most favorable to Helen and the trial court's judgment, there was no abuse of discretion in the property division.

This appeal falls so far short of demonstrating even a semblance of abuse of discretion by the trial court in dividing the property of the parties that it deserves only minimal consideration. As to what constitutes abuse of discretion, see *McFarlan* v. *Fowler Bank City Trust Company* (1938), 214 Ind. 10, 14, 12 N.E.2d 752; *Weiss* v. *Weiss* (1974), 159 Ind. App. 231, 306 N.E.2d 120, 125; *Shaw* v. *Shaw* (1973), 159 Ind. App. 33, 304 N.E.2d 536, 539; *Ferguson* v. *Ferguson* (1955), 125 Ind. App. 596, 603, 125 N.E.2d 816.

The trial court in exercising its discretion to effect a property division of the parties obviously followed the long standing and repeatedly followed principle in *Bahre* v. *Bahre* (1962), 133 Ind. App. 567, 181 N.E.2d 639, that these factors may be considered:

> . . . (1) the existing property rights of the parties, Shula v. Shula (1956), 235 Ind. 210, 132 N.E.2d 612; Ferguson v. Ferguson (1955), 125 Ind. App. 596, 125 N.E.2d 816; (2) the amount of property owned and held by the husband and the source from which it came, Poppe v. Poppe (1944), 114

---

2. Jack raised four issues in his Motion to Correct Errors, all related to whether or not the trial court's property settlement was an abuse of discretion. All four issues are treated together by Jack and we shall do the same. Indiana Rules of Procedure, Appellate Rule 8.3(A)(7).

Ind. App. 348, 52 N.E.2d 506; McHie v. McHie (1939), 106 Ind. App. 152, 16 N.E.2d 987; (3) the financial condition and income of the parties and the ability of the husband to earn money, Logan v. Logan (1883), 90 Ind. 107; Poppe v. Poppe, supra; Glick v. Glick (1927), 86 Ind. App. 593, 159 N.E. 33; Cornwell v. Cornwell (1940), 108 Ind. App. 350, 29 N.E.2d 317; Hedrick v. Hedrick (1891), 128 Ind. 522, 26 N.E. 768; (4) whether or not the wife by her industry and economy have contributed to the accumulation of the husband's property, Yost v. Yost [141 Ind. 584, 41 N.E. 11], supra; (5) the separate estate of the wife, Stultz v. Stultz (1886), 107 Ind. 400, 8 N.E. 238.

Recognizing Helen's contribution by her industry to the accumulation of the joint assets of the parties, the trial court roughly divided the joint property between them and left each of them with their separate property . . . a most defensible division under these circumstances. Compare *Zagajewski* v. *Zagajewski* (1974), 161 Ind. App. 98, 314 N.E.2d 843, 847.

Jack's detailed objections to the division of property between the parties are without merit. He merely invites us to reweigh the evidence . . . an invitation we frequently decline. Particularly, he seems piqued that the trial court did not take into account Helen's inheritance in making an "equal and fair division between the parties". He cites no authority for his apparent claim that he is entitled to some share of Helen's inheritance from her mother . . . and of course there is no such authority.[3] It has been repeatedly held that in reaching a fair division of the property under the circumstances, the court may look to *all* the property the spouses. *See, Shula* v. *Shula* (1956), 235 Ind. 210, 132 N.E.2d 612; *Plese* v. *Plese* (1970), 146 Ind. App. 545, 257 N.E.2d 318; *Miller* v. *Miller* (1970), 146 Ind. App. 455, 256 N.E.2d 589; *Sidebottom* v. *Sidebottom* (1967), 140 Ind. App. 657, 225 N.E.2d 772.

3. This case is totally unlike *Loeb* v. *Loeb* (1973), 261 Ind. 193, 301 N.E.2d 349, which held that a husband's vested remainder in a trust subject to a condition subsequent was not includable in the property settlement as part of the separate property of the husband.

As the judgment of the trial court is not one which is "clearly against the logic and effect of the facts and circumstances before the court" (*McFarlan* v. *Fowler*  *Bank City Trust Company, supra*) it should be affirmed.

Affirmed.

Sullivan, P.J. and White, J., concur.

NOTE.—Reported at 338 N.E.2d 728.