(134 So. 1)

## WALDROP v. WALDROP.
### 6 Div. 756.

Supreme Court of Alabama.
April 16, 1931.

L. D. Gray, of Jasper, for appellant.

626

Pennington & Tweedy, of Jasper, for appellee.

**BOULDIN, J.**

Bill in equity for separate maintenance of the wife.

Much of the record deals with the controversy as to who was at fault in the separation of husband and wife and their continued living apart.

Beginning with the removal from Huntsville to Jasper in 1925, the husband entering upon a new field of employment, and the wife going for the time with their two children on a visit to her father and mother in Louisiana, it does not appear that either had a definite purpose of final separation.

During the three years which followed before the bringing of this suit, there was a drifting apart. The effort of the wife, by continuing her profession as a teacher, to support herself and children, and lessen the burden on her parents, as she had done to aid her husband in former years, cannot justly be viewed as indicating a purpose to break with her husband.

One outstanding fact is that, save for his trip to Louisiana in the spring of 1926, when the baby was very sick, the only occasions when they were together was when the wife and children came to Alabama, meeting him at the home of his mother at Christmas time, 1926, and again while she was attending a summer school in Birmingham-Southern College in 1928.

The friendly helpful attitude of her father and mother, and, so far as appears, of his family also, has been altogether commendable.

Not to go to see either wife or children during this long period, nor to contribute any substantial amount to their support and care in sickness or in health, while adding steadily to his own accumulations, speaks loudly in the case.

A detailed discussion of the evidence disclosing the attitude of both parties toward all the obligations of family life, leading on to the suggestion of divorce, and the reactions of both parties in that regard, would serve no good purpose. Suffice to say a careful study of the record satisfies us the trial court was well supported in his finding that the abandonment of further hope of living together was effected by the peremptory announcement of the husband of such purpose in Birmingham in 1928, leaving the wife nothing to do but to go her way while he should go his way.

It follows complainant has not forfeited her right to separate maintenance. Rearden v. Rearden, 210 Ala. 129, 97 So. 138; Rogers v. Rogers, 215 Ala. 259, 110 So. 140; Anonymous, 206 Ala. 295, 89 So. 462.

Complainant has no separate estate nor income other than from her personal earnings as a teacher. Respondent argues there is no right to separate maintenance where the wife can and does make a living, and is not liable to become a public charge.

Brady v. Brady, 144 Ala. 414, 39 So. 237, and Ex parte State ex rel. Tissier, 214 Ala. 219, 106 So. 866, are relied upon as authority. These cases deal with allowances pendente lite before the wife has any adjudication of a right to separate maintenance. In the Brady Case it appeared she had property sufficient to maintain her during the pendency of the suit. Whether such rule should apply to mere ability to maintain herself by her earnings is not here involved. No temporary alimony pendente lite was awarded.

We would make it plain that a husband in Alabama cannot cast off his wife and relieve himself of the duty of maintenance because she is able to take care of herself by her work. Even more apparent is it that he

cannot defend upon the ground that she has parents able and willing to contribute to her support, if need be, and that without the thought of recompense. No such construction is to be put on the above-cited cases.

■ The danger of the wife becoming a public charge is stated as one of the reasons in law for awarding the wife separate maintenance. But this court has expressly declared "another purpose is to right the wrongs of an injured wife, and the latter purpose will be served even though the former be not involved." Ex parte Allan, 220 Ala. 482, 125 So. 612, 614.

■ The rule has been declared in this state, and consistently adhered to, that, in awarding separate maintenance or alimony without suit for divorce, the court deals only with the husband's income. Bailes v. Bailes, 216 Ala. 569, 114 So. 185; Murray v. Murray, 84 Ala. 363, 4 So. 239; Brady v. Brady, supra; Clisby v. Clisby, 160 Ala. 572, 49 So. 445, 135 Am. St. Rep. 110; Rearden v. Rearden, supra.

■ But it is also firmly fixed in our law that actual temporary income is not the sole basis of such award. Available income from property holdings and earning capacity are factors now fully recognized. Johnson v. Johnson, 195 Ala. 641, 71 So. 415; Ex parte Whitehead, 179 Ala. 652, 60 So. 924; Thomas v. Thomas, 211 Ala. 504, 100 So. 766; Epps v. Epps, 218 Ala. 667, 120 So. 150; Rearden v. Rearden, 210 Ala. 129, 97 So. 138.

In this case there are two girl children, one 11 years of age when the bill was filed in 1928, the other 4 years of age. These have been in the custody of the mother since 1925. They so remain with the implied consent of the husband; and we deem it proper to add that, so far as this record discloses, they are where they should be.

■ The maintenance of these children is a prime consideration. The high duty of the father to maintain them persists. An award or an increased allowance to the mother to aid in their support is a well-recognized and proper practice. No legal requirement of a guardian is recognized. The duty of a father to contribute to the maintenance of his children is not limited to his income. He must support his children reasonably according to his means. Worthington v. Worthington, 215 Ala. 447, 111 So. 224; Higgenbotham v. State, 20 Ala. App. 476, 103 So. 71; Rogers v. Rogers, 215 Ala. 259, 110 So. 140; Ex parte Allan, supra.

The bill was filed August 6, 1928. On December 10, 1928, respondent, in answer to an interrogatory calling for an itemized list of his property, said: "One chevrolet coupé, one suite of bedroom furniture, one accumulative installment certificate, on which has been paid $3,710 and which will mature $5,000 April 17, 1934; one accumulative investment certificate, on which has been paid $1,480, to mature April 18, 1937."

The first bond was paid up. It clearly appears this represents savings from his earnings since marriage. Prior to 1925, the wife, by devoting her own earnings to meeting family expenses, made possible such savings. It appears the greater part has been accumulated from earnings since 1925, while the wife has maintained herself and children, with the aid of large contributions from her father and mother, especially the expenses of much sickness.

Respondent met bills of several hundred dollars during the baby's sickness during the spring of 1926. All told, his contributions since their going to Louisiana have been little more than $500.

The most difficult feature of the case is to determine the amount the husband should be required to contribute to the maintenance of his wife and children. Their needs, much increased by hospital and doctors' bills, are great. The ability of the husband is the question left most in doubt.

The purchase of a new car, putting the title in his mother's name, and the alleged withdrawal of the loan value on his investment certificates, some $3,700, and the alleged expenditure of such funds, together with admitted current income of some $77 per month, all within some eight months, while this suit was pending, so smacks of a fraudulent design to evade the result of this suit as to call for scrutiny of all his testimony on this line.

■ But for certain views which seem to obtain at times, we would deem it needless to say that the dissipation of one's holdings by whatever route pending a suit of this character can afford no protection; and the evasion of a clear exact showing may lead to harsh results for which the party has himself to blame.

On the other hand, guarded justice, guided by the best lights before us, and free from any tinge of oppression, is and must be the aim of courts of equity.

No evidence directly contradicts the testimony of respondent that his income as a salesman of investment securities during 1929 amounted to approximately $77 per month, an amount not equal to living and traveling expenses. This seems admittedly a temporary situation. All the factors entering into this great reduction of income are not apparent, but certainly it is fair to assume that business conditions then and thereafter have affected his earning capacity.

The trial court awarded $60 per month from and after June 30, 1928, resulting in a

decree in gross for $1,378, May 29, 1930, and $60 per month from and after July 1, 1930; this besides attorneys' fees and costs of suit.

In Thomas v. Thomas, 211 Ala. 504, 100 So. 766, under the facts of the particular case and for reasons there stated, the monthly allowance was awarded beginning as of date of service of process upon bill filed. Not declaring this a proper rule in all cases, it is a conservative one, which we think should be applied in this case.

We are of opinion the decree should be so modified as to award the sum of $1,000 in full to April 1, 1931, and the further sum of $50 per month, payable on the 1st of each calendar month, beginning May 1, 1931. Otherwise the decree is approved. Such decree will be, as of course, subject to future modification up or down as the conditions shall demand.

Such modified decree were best entered in the trial court. The decree will therefore be affirmed in part and in part reversed at the cost of appellant, and the cause remanded, with directions to enter a decree as above indicated.

Affirmed in part, and in part reversed and remanded.

ANDERSON, C. J., and GARDNER and FOSTER, JJ., concur.