MICHAEL M. BILL *v*. PATRICIA H. BILL.

[No. 172A10. Filed December 29, 1972.]

---

7. See n. 1, p. 57.

66

68

*William P. Wooden, Wooden, Stark, McLaughlin & Sterner, Felson Bowman, Walter E. Bravard, Jr., Lewis, Bowman & St. Clair,* of Indianapolis, for appellant.

*Robert A. Rose, Franklin I. Miroff, Klineman, Rose & Wolf,* of Indianapolis, for appellee.

## CASE SUMMARY

BUCHANAN, P.J.—This is an appeal by Defendant-Appellant, Michael Bill (Michael) from an adverse Pendente Lite Support Order (as to children only) in an absolute divorce action filed by Plaintiff-Appellee, Patricia Bill (Patricia), claiming abuse of discretion by the trial judge. We affirm.

FACTS—In April of 1962, Patricia and Michael were married. By October, 1968, four children had been born as a result of this marriage.

Michael's assets at the time of the marriage amounted to

about $45,000.00. While Patricia had no assets at the time of the marriage, shortly thereafter she inherited a Trust Fund of Unicoa Stock valued at One Million Dollars. Until 1968, Patricia received an annual dividend income from this trust Fund of from $16,000.00 to $20,000.00 per year.

In 1963, Michael founded his own insurance company. Since Patricia was receiving a sizeable annual income from the Trust Fund, Michael and Patricia agreed to use her income as their primary source of funds for family maintenance. As a result, during the early years of the marriage, Michael's salary from his insurance business was returned to the capital fund of the business to stimulate its growth. Eventually, Michael was able to withhold enough of his salary so that both he and Patricia were each contributing about fifty percent (50%) towards family maintenance. As is shown by the evidence, the use of Patricia's dividend income and portions of Michael's salary permitted Patricia and Michael and their children to lead a comfortable life.

In 1968, due to drastic decline in the value of Unicoa Stock the annual dividend income received from the Trust Fund stopped. As a result, Patricia began to withdraw amounts from the principal of the Trust Fund to supplement Michael's income from the insurance business so that the parties could maintain the standard of living to which they had become accustomed.

By mid 1971, Michael's net worth amounted to $106,639.00 and Patricia's net worth was approximately $450,000.00. While a large portion of Michael's assets were tied up in several unsuccessful corporations, Patricia's assets included a one-half interest in the family house and furniture, stocks held jointly with Michael, and her sole ownership of other stocks and margin accounts.

On August 18, 1971, Patricia filed a Complaint for Absolute Divorce on the grounds of cruel and inhuman treatment. On

October 1, 1971, Patricia filed a Petition for Preliminary Hearing for Temporary Allowance, Support, Attorneys Fees and Restraining Order.

A hearing was held on October 15, 1971, Patricia testified that from August 5, 1971 (the time of her separation from Michael) to October 15, 1971 (the date of the hearing), she was required to spend approximately $4,500.00 for actual living expenses for herself and the four children. Michael contributed only $485.00

Michael testified that his total income was in the form of salary of $2,160.00 per month. The evidence, however, indicated that Michael could have increased his salary but that he chose instead to reinvest any possible increases into his insurance company.

Michael estimated that his living and fixed expenses per month amounted to $2,486.00, excluding child support payments, computed as follows :*

| | |
|---|---:|
| His separate living expenses—rent, food, clothing, etc. | $   420.00 |
| Loan payments—Merchants National Bank & Trust Company of Indianapolis | 550.00 |
| Federal Tax Liability for 1970 | 227.00 |
| Federal Tax Liability for 1971 | 338.00 |
| State Taxes for 1971 | 55.00 |
| Life Insurance Premiums | 150.00 |
| Family Health Insurance Premiums | 42.00 |
| Car Insurance Premiums—on Patricia's Automobile | 16.00 |
| Real Estate Taxes on Jointly Owned Apartment Building | 250.00 |
| Expenses for the family home—Mortgage Payments, property tax, property insurance | 350.00 |
| Gas | 24.00 |
| Electricity | 53.00 |
| Telephone | 11.00 |
| TOTAL PER MONTH | $2,486.00 |

*All amounts rounded off to nearest dollar (Hereinafter referred to as *Estimated Monthly Expenses*".)

After analyzing the evidence, trial briefs and oral arguments by counsel, on December 8, 1971, the Trial Court issued its Pendente Lite Order. The following is a brief summary of the relevant portions of this Order:

1. During the remainder of the litigation, Patricia shall have custody of the four children;
2. Patricia has ample funds to provide for her own support and attorney's fees in the prosecution of the divorce action;
3. Michael shall provide support for the children in the amount of $60.00 per week per child or a total of $240.00 per week commencing retroactively to August 20, 1971, and payable each week thereafter;
4. The unpaid support accruing from August 20, 1971, (the date of separation) to December 8, 1971, (the date of the Court's Order) shall be paid by Michael within ten (10) days of the entry of the Pendente Lite Order. However, Michael's retroactive obligation shall be credited in the amount of $485.00, representing support payments already made;
5. As further support for the children, Michael shall continue to pay the mortgage payments, property taxes, Home Owner's Insurance, and repair and maintenance expenses of the family home;
6. As further support for the children, Michael shall pay any medical, dental and educational expenses of the children following the date of the entry of the Order;
7. Michael shall pay to Patricia the sum of $500.00 as reasonable attorney's fees incurred by her in seeking a Support Order for the children;
8. The Pendente Lite Support Order shall be a continuing Order subject to modification by Petition of either party based upon the needs of the children or the financial ability of Michael to provide for such support (*the Support Order herein*).

A review of the terms of the Support Order and Michael's Estimated Monthly Expenses indicates that their combined effect is to require Michael to pay a minimum monthly expense total of $3,536.00 (*Minimum Monthly Expenses* herein).

The total of $3,536.00 does not include fluctuating expenses required by the Support Order to which a specific monetary

value cannot be assigned, *i.e.*, medical, dental, and educational expenses of the children and any maintentance and repair expenses for the family home. These expenses, when incurred, are required to be paid by Michael in addition to the Minimum Monthly Expenses of $3,536.00.

Michael now appeals from the Trial Court's Pendente Lite Support Order.

### ISSUES

ISSUE ONE.  Did the trial court abuse its discretion by requiring Michael to pay Patricia $500.00 for attorney's fees which were incurred by her in seeking the Pendente Lite Support Order?

ISSUE TWO.  Did the trial court have the power on December 8, 1971, to retroactively order Michael to pay child support payments from a date commencing two days after the Divorce Complaint was filed?

ISSUE THREE.  Is the amount of the Pendente Lite Support Order so excessive as to constitute an abuse of discretion?

Patricia has not favored us with a brief. Such an omission, however, will only be considered as a confession of error if Michael's brief demonstrates prima facie reversible error. *Fagan* v. *Royer* (1963), 244 Ind. 377, 193 N.E.2d 64; *Meadows* v. *Hickman* (1947), 225 Ind. 146, 73 N.E.2d 343.

As to ISSUE ONE, Michael argues that the trial court abused its discretion in awarding $500.00 attorney's fees to Patricia for the reason that the evidence revealed that Patricia had more than sufficient assets with which to pay attorney's fees. Michael contends that the court ignored this evidence, as well as evidence of the relative financial standings of the parties.

As to ISSUE TWO, Michael asserts that the trial court did did not have the power to order him to pay support payments retroactive to August 20, 1971.

As to ISSUE THREE, Michael argues that the amount of the Pendente Lite Support Order was so excessive as to constitute an abuse of discretion. Michael says that prior to the filing of the divorce, *both* he and Patricia shared equally in the responsibility of providing the family with a comfortable standard of living but the Support Order requires him to provide this standard of living alone and imposes on him exclusively a financial burden which results in monthly liabilities in excess of his monthly income.

## DECISION

ISSUE ONE—It is our opinion that the trial court did not abuse its discretion when it required Michael to pay Patricia $500.00 attorney's fees which were incurred by her in seeking the Pendente Lite Support Order.

Ind. Ann. Stat. § 3-1216 (Burns 1968) in part provides that:

> "3-1216. INTERLOCUTORY ORDERS — SUIT MONEY—HOW ENFORCED.—Pending a petition for divorce, the court, or the judge thereof in vacation, may make, and by attachment enforce, *such orders for the disposition of the persons, property and children of the parties* as may be deemed right and proper and such orders relative to the expenses of such suit and attorney fees as will insure to the wife an efficient preparation of her case and a fair and impartial trial thereof. * * *" (Emphasis supplied.) *(3-1216 herein.)*

3-1216 on its face expresses concern for "the children of the parties" and directs the court to enter orders "deemed right and proper" in their best interest. Remembering that Patricia was specifically denied temporary support, the Support Order entered was primarily for *their benefit*—all four of them. For reasons which will more fully appear in our discussion of ISSUE THREE, it was not an

abuse of discretion to require Michael to pay these attorney's fees even though there may have been some incidental benefit to Patricia. *Dragoo* v. *Dragoo* (1961), 133 Ind. App. 394, 182 N.E.2d 434; *Palmer* v. *Palmer* (1962), 133 Ind. App. 415, 182 N.E.2d 593.

ISSUE TWO—It is our opinion that the trial court had the power to retroactively order Michael to pay child support payments for the 15-week period subsequent to filing of the Divorce Complaint.

Our previous allusion to 3-1216, stressed that statute's concern for the welfare of the children of the parties during the pendency of a divorce action. So pendente lite support orders are necessarily designed to maintain the status quo in order to cushion the shock of family disintegration. It is only logical that if the court here had jurisdiction over the parties and the subject matter on August 20, 1971, (and it is not contended otherwise), then it had the power under § 3-1216 to make any reasonable orders necessary to fulfill this purpose from the date it acquired such jurisdiction. By ordering payments to be made retroactively to August 20, 1971, the court attempted to maintain the status quo for the protection of the children.

In *Dissette* v. *Dissette* (1935), 208 Ind. 567, 196 N.E. 684, our Supreme Court approved a retroactive support order similar to this Support Order. The trial court entered a final divorce order on January 23, 1932, in which the custody of the children was given to the mother. The matter of support payments, however, was taken under advisement. On March 25, 1932, more than two months after the divorce order was entered, the trial court amended the January 23 divorce decree by fixing the amount of the child support payments and required that they be paid retroactively to February 1, 1932. In approving this retroactive order, our Supreme Court said:

"We see no valid objection to the order making the payments to begin on February 1, 1932. The judgment for divorce was entered on January 23, 1932, and the custody and control of the children was given to the appellee, and the matter of support was taken under advisement; and, on March 25, 1932, an amended decree was entered fixing the amount. We think the court had the right to fix the amount and the time when the payments were to begin at the time the amended decree was made."

Michael perceives a line of cases prohibiting retroactive increases of an *existing* support payment as also prohibiting retroactive effect being given to an *original* support order. This is not so. Provided the trial court has jurisdiction of the subject matter and the parties, it may give retroactive effect to its initial support order. *Dissette* v. *Dissette, supra.*

ISSUE THREE—It is our opinion that the amount of the Support Order was not so excessive as to constitute an abuse of discretion by the trial court.

Because Indiana law as to precisely what constitutes abuse of discretion by a trial court determining temporary child support is sparse, it behooves us to give more than casual consideration to this issue. Support orders affecting children are being entered daily and the limits of a judge's discretion should be known.

At common law, a father had an absolute duty and obligation to support his children without a court decree. A court order requiring the payment of this support does nothing more than carry out this common law principle. *Crowe* v. *Crowe* (1965), 247 Ind. 51, 211 N.E.2d 164.

When entering a pendente lite order requiring a father to make support payments for the benefit of his children, the court must consider the necessities of the child in view of the parties' station in life, the particular facts and circumstances of the case, the amount of the

husband's property and his ability to earn money. *Corbridge* v. *Corbridge* (1951), 230 Ind. 201, 102 N.E.2d 764; *Bitner* v. *Bitner* (1949), 228 Ind. 259, 91 N.E.2d 169; *Dissette* v. *Dissette, supra; Seward* v. *Seward* (1956), 126 Ind. App. 607, 134 N.E.2d 560; *Dragoo* v. *Dragoo, supra; Bahre* v. *Bahre* (1962), 133 Ind. App. 567, 181 N.E.2d 639. The trial court's determination with respect to the amount of child support will not be disturbed by this court unless an abuse of discretion is clearly shown. *Dorman* v. *Dorman* (1968), 251 Ind. 272, 241 N.E.2d 50; *Poppe* v. *Poppe* (1944), 114 Ind. App. 348, 52 N.E.2d 506; *Seward* v. *Seward, supra; Haag* v. *Haag* (1959), 240 Ind. 291, 163 N.E.2d 243.

While the court must consider the amount of the father's property and his ability to earn money, is it proper or necessary for the court to also consider the mother's property and her ability to earn money?

Other states have taken one of two conflicting positions with respect to a father's duty to support his children and whether a trial court may consider the financial position of the mother when making an order for child support. The traditional view has been that the support of a child is exclusively a father's obligation, and that the wife's separate income, assets, and ability to provide for the children are irrelevant to the father's obligation to support the children. *Mathews* v. *Mathews* (1960 Mo. App.), 337 S. W. 2d 529; *Rutledge* v. *Rutledge* (1909), 177 Mo. App. 469, 119 S. W. 489; *Newell* v. *Newell* (1956), 146 Cal. App. 2d 166, 303 P. 2d 839; *Wilmot* v. *Wilmot* (1953), 223 La. 221, 65 So. 2d 321; *Matthews* v. *Matthews* (1946), 71 S. D. 115, 22 N. W. 2d 27; *Hooks* v. *Hooks* (1940 Tex. Civ. App.), 139 S. W. 2d 305. In fact, some states have gone so far as to hold that where the father has ample means, the mother's financial position may not even be considered. *Dworkis* v. *Dworkis* (1959 Fla. App.), 111 So. 2d 70; *Ring* v. *Ring* (1946), 185 Va. 269, 38 S. E. 2d 471; *De Simone* v. *De Simone* (1965 Ky.), 392 S. W. 2d 68. Under the traditional rule, then, the fact that the

mother has independent earning capacity does not relieve the father of his duty to support his children. *Hampshire* v. *Hampshire* (1950), 70 Idaho 522, 223 P. 2d 950; *Toebe* v. *Toebe* (1948), 225 Minn. 323, 30 N. W. 2d 585. Moreover, this duty is not limited to the father's income or present earnings—the court may also consider his ability to earn money and make an award based thereon, even though the father owns no property. *Waldrop* v. *Waldrop* (1931), 222 Ala. 625, 134 So. 1; *Hembree* v. *Hembree* (1925), 208 Ky. 658, 271 S. W. 1100; *Commonwealth* v. *Haley* (1962), 199 Pa. Super. 235, 184 A. 2d 155; *Voss* v. *Voss* (1966 Idaho), 415 P. 2d 303; *Mowery* v. *Mowery* (1955), 38 N. J. Super. 92, 118 A. 2d 49.

Recently, however, there has been an increasing tendency, evidenced especially in decisions based on up-dated statutes, to consider child support an obligation of both parents and to require both parents to contribute to a child's support in proportion to their financial ability. See, generally: Annotation 1 A. L. R. 3d 396, § 7. The principle underlying this trend can be divided into two parts. A few states have held that a mother should not receive any child support allowance if she has ample means of her own to provide such support. Other states, however, have not gone so far. In recognizing that both parents have a duty to support their children, these states have held that a mother should not be awarded a full child support allowance if her financial position is such that she can contribute her share towards supporting the children. 2 *Nelson, Divorce and Annulment* 117, § 14.83. *Addy* v. *Addy* (1949), 240 Iowa 255, 36 N.W.2d 352; *Stillmunkes* v. *Stillmunkes* (1954), 245 Iowa 1082, 65 N. W. 2d 366; *Allison* v. *Allison* (1961), 188 Kan. 593, 363 P. 2d 795; *Cupit* v. *Brooks* (1955), 223 Miss. 887, 79 So. 2d 478; *Lowry* v. *Lowry* (1956), 229 Miss. 376, 90 So. 2d 852; *Bruguier* v. *Bruguier* (1951), 12 N. J. Supp. 350, 79 A. 2d 497; *Hood* v. *Hood* (1921), 138 Md. 355, 113 A. 895; *Webb* v. *Daiger* (1961 D. C. Mun. App.), 173 A. 2d 920; *Woodward* v. *Woodward* (1967 Wyo.), 428 P. 2d 389; *Kane* v. *Kane* (1964), 154 Col.

440, 391 P. 2d 361. This recent tendency is not reflected in our statutory law. To the contrary Ind. Ann. Stat. § 3-1219 (Burns 1968) concerning guardianship, custody, support and education of minor children, enacted in 1873 and amended in 1961 and 1965, places Indiana within the traditional rule discussed above. It is cast in terms of the *father's* duties and obligations:

> "The court in decreeing a divorce shall make provision for the guardianship, custody, support, and education of the minor children of such marriage; and the court may require *the father* to provide all or some specified part of the cost of education of such child or children beyond the twelfth year of education provided by the public schools, taking into consideration *the earnings of the father,* the station in life of the parents and child or children involved, the aptitude of the child or children as evidenced by school records, the separate property of the child or children, and all other relevant factors: Provided, That the jurisdiction over the child or children shall remain in the court at all times during the child's or children's minority and shall not be lost because of the death of either parent." (3-1219 herein.)

Furthermore, the cases interpreting § 3-1219, discuss the *father's* common law duty and obligation to support his children. *Crowe* v. *Crowe, supra; Leibolde* v. *Leibolde* (1902), 158 Ind. 60, 62 N.E. 627; *Bottorff* v. *Bottorff* (1921), 190 Ind. 90, 129 N.E. 478. Our research has failed to disclose any Indiana case placing the burden upon the mother to support the children where the father is able to provide such support. In fact, the Indiana case of *Bitner* v. *Bitner, supra,* has been cited by many secondary authorities and research aids as a leading case indicative of the traditional rule that the support of a child is exclusively a father's obligation, even though the mother may have ample means of her own to provide such support. 24 Am. Jr. 2d, *Divorce and Separation,* § 836, p. 948; Annot. 1 A. L. R. 3d 382, 396 § 7; 2 Nelson, *Divorce and Annulment,* 117, § 14.83.

The one case in Indiana which supports our conclusion that a father with adequate means to support his children has the

obligation pendente lite to support them without reference to the mother's income and property, is *Bitner* v. *Bitner, supra*. The court does not definitively state this principle as such, but on facts strikingly similar to those before us, the holding is to affirm a trial court's pendente lite order for child support entered against the father exclusively even though both father and mother had substantial property and income.

The mother in *Bitner* owned securities valued in excess of $367,500.00, and unlike the case before us had income of $6,230.85 during the year the divorce was filed. The father owned assets of a somewhat lesser value than those of the wife, and received an annual income of $26,500.00, subject to payment of various debts in the amount of $17,200.00.

Based on this evidence, the trial court ordered the father to pay approximately $400.00 per month for the support of his two minor children. Referring to the trial court's order requiring only the father to pay pendente lite child support our Supreme Court said:

> ". . . it would seem to us the trial court was empowered to make this order as to the support of the children. *It is also our opinion that there was ample evidence to support this portion of the order.*" (Emphasis supplied.)

Michael's income of approximately $26,000.00 is almost identical to the income of the *Bitner* father which was $26,-500.00, and likewise subject to payment of substantial indebtedness resulting from prior obligations and loans. Our research discloses no subsequent Indiana case which has diluted or refused to apply the strict application of the traditional rule as exemplified by the *Bitner* case.

As Indiana law now exists a pendente lite support hearing is an inquiry into the most effective means of temporarily maintaining adequate financial assistance for the young. It is not a contest between the parents as to which of them will bear the financial burden.

Michael not only complains that Patricia should share in

the support of the four children as she did prior to filing the divorce, but that he will be forced into debt because his Minimum Monthly Expenses of $3,536.00 are approximately $1,400.00 in excess of his monthly income of $2,160.00. This may be true. Even so, forced indebtedness of the father is only one of several factors to be considered, and that factor alone will not relieve a father of his obligation to support his children. *Crowe* v. *Crowe, supra; Hylek* v. *Hylek* (7th Cir. 1945), 148 F. 2d 300.

That forced indebtedness alone will not relieve a father of his child support obligation is demonstrated by *Crowe* v. *Crowe, supra* where our Supreme Court spoke of bankruptcy:

> "Even bankruptcy does not relieve a father of the obligation to make support payments for his children. *Hylek* v. *Hylek* (7th Cir. 1945) 148 F. (2d) 300."

The protection and well-being of the offspring of the marriage is a primary objective of a support order pursuant to 3-1216 and 3-1219 and is superior to the needs of the parents. The best interests of the children override forced indebtedness of the father. *Crowe* v. *Crowe, supra.*

If there was further evidence, in addition to the factor of his forced indebtedness, which would relieve Michael of his duty to support his children, he should have produced such evidence at the hearing. The effect of a failure to produce such mitigating evidence was described in *Crowe* v. *Crowe:*

> "If there is evidence or facts under which the father is relieved from his common law and statutory duty of support, it is incumbent upon him to come forth with such evidence in mitigation or defense. The burden is upon the father to show that he cannot support his child or children or pay all the sums required for their support. Such evidence might show that the father is unable, physically or mentally, to engage in employment or is unable, for other reasons, to obtain employment and has no other income with which to make such payments. These are all matters of defense and such evidence is peculiarly within the control and knowledge of the father. He is in better position to furnish

the evidence as to his ability to support or not support his children than anyone else. In considering this question, it is the childrens' interest with which the court is primarily concerned. It should not be looked upon as a game between divorced parents who are in disagreement."

To gain a reversal of the Trial Court's support order Michael was bound to present a prima facie case of abuse of discretion. In *McFarlan* v. *The Fowler Bank City Trust Company* (1937), 214 Ind. 10, 12 N.E.2d 752, our Supreme Court defined abuse of discretion:

"An abuse of discretion is an erroneous conclusion in judgment, one clearly against the logic and effect of the facts and circumstances before the court, or the reasonable, probable, and actual deductions to be drawn therefrom."

On the basis of the evidence presented, we are unable to conclude that the amount of the support order was ". . . clearly against the logic and effect of the facts and circumstances before the court, . . ." Apparently the trial judge gave weight to Michael's ability to earn money and possibly control the amount of his salary—considerations supported by the evidence.

The Support Order entered by the trial judge had the virtue of a safety valve. It provided for modification depending on the needs of the children "or the financial ability of defendant to provide for such support."

It also found that Patricia had funds for her own support. There is no claim, or evidence supporting a claim, that the effect of the amount of the Support Order is to in fact support Patricia, or any other person. Nor is the Support Order shown to be an unwarranted burden on Michael because of extravagant expenditures over and beyond the station in life of the parties.

There appears to be a reasonable nexus between the amount of the Support Order and the evidence introduced. Temporary

82

forced indebtedness of the father and affluence of the mother (Patricia) under the circumstances of this case, do not mitigate a father's firmly established duty to support his progeny.

While Indiana case and statutory law compel us somewhat reluctantly to support this Support Order, we do interpret our law as permitting a trial court in the proper circumstances, to subject the assets and income of a mother to temporary or permanent child support even though the father has financial means. It may do so. By not doing so in this case, a harsh result seems to have been reached. Perhaps Michael should seek modification of the Support Order.

Until the Legislature bestirs itself to modernize our divorce laws, it is not an abuse of discretion for a trial court to ignore the mother's independent financial means in entering pendente lite child support orders if the father is capable of providing adequate support. 3-1219, *Bitner, Crowe, Hylek, supra.*

No abuse of discretion being demonstrated, the judgment of the trial court is therefore affirmed.

Hoffman, C.J. (by designation) concurs; White, J., concurs; Sullivan, J., not participating.