JOHN P. GEBERIN *v.* JULIA M. GEBERIN.

[No. 3-276A23. Filed February 21, 1977.]

*John P. Geberin, George M. Bowser, Bowser & Geberin,* of Warsaw, for appellant.

*Alfred H. Plummer III, Plummer, Tiede, Magley & Metz,* of Wabash, for appellee.

STATON, P.J.—John P. Geberin and Julia M. Geberin received their divorce on September 10, 1975. John contends in his appeal to this Court that the "Decree Corrected" is not supported by sufficient evidence and is contrary to law.[1] His appeal focuses upon division of property, child support, and

---

1. The "Decree Dissolution of Marriage" was entered on April 24, 1975. On June 21, 1975, John filed a motion to correct errors. On July 21, 1975, the trial court heard arguments thereon; the court corrected three property sections of the decree and entered its findings on September 10, 1975.

attorney fees.[2] After examining the evidence, we conclude that the evidence was sufficient and that the "Decree Corrected" was not contrary to law. We affirm.

## I.

### Division of Property

IC 1971, 31-1-11.5-11 (Burns Supp. 1976) provides that:

"In determining what is [a] just and reasonable [property division] the court shall consider the following factors:

(a) the contribution of each spouse to the acquisition of the property, including the contribution of a spouse as homemaker;

(b) the extent to which the property was acquired by each spouse prior to the marriage or through inheritance or gift;

(c) the economic circumstances of the spouse at the time the disposition of the property is to become effective, including the desirability of awarding the family residence or the right to dwell therein for such periods as the court may deem just to the spouse having custody of any children;

(d) the conduct of the parties during the marriage as related to the disposition or dissipation of their property;

(e) the earnings or earning ability of the parties as related to a final division of property and final determination of the property rights of the parties."

John directs our attention to many individual facets of the property settlement; his argument, distilled, is that the trial court abused its discretion in considering, or failing to consider, each of the factors enumerated in IC 1971, 31-1-11.5-11 (Burns Supp. 1976). In *Williams* v. *Williams* (1974), 160 Ind. App. 75, 310 N.E.2d 87, 88, this Court held that " '. . . The decision of the trial court, relative to property rights, alimony, and other allowances are [sic] reviewable for a determination of abuse of judicial discretion,

---

2. After John perfected this appeal, Julia asked for and was allowed additional attorney fees to defend the appeal. John filed a motion to correct errors directed to that issue; the motion was overruled on May 24, 1976. On August 26, 1976, this Court granted leave for John to consolidate that issue into the pending appeal.

and for that purpose only. . . .' " (Citing *Boshonig* v. *Boshonig* [1971], 148 Ind. App. 496, 267 N.E.2d 555, 556.)

Examining a decision for possible abuse of discretion does not entail reweighing the evidence; we may consider the evidence only in the light most favorable to the appellee. *Williams, supra.* In order to determine whether the trial judge abused his discretion in a property division pursuant to a divorce, this Court will only consider whether the trial judge made an erroneous conclusion in judgment, a conclusion against logic and effect of facts and circumstances before the court, or the reasonable, probable, and actual deductions to be drawn therefrom. *Burkhart* v. *Burkhart* (1976), 169 Ind. App. 588, 349 N.E.2d 707. We may reverse the trial court's determination with respect to property distribution only for an abuse of discretion, and the fact that the same circumstances might justify a different award does not permit us to substitute our judgment for the judgment of the trial court. *Tomlinson* v. *Tomlinson* (1976), 170 Ind. App. 331, 352 N.E.2d 785.

The judgment of the trial court is detailed. The judge heard copious evidence on the subject of property, and the distribution of property is supported by the evidence. John complains that the court did not apply IC 1971, 31-1-11.5-11; but we note here that the division of the property *itself* indicates that the trial judge considered the statutory factors. John was awarded real estate which he owned prior to the marriage; he was awarded specific household items which the couple had received as gifts from his parents. Moreover, the trial judge *re*appraised his judgment after John filed his first motion to correct errors. This reappraisal is not "against logic and effect of facts and circumstances." *Burkhart, supra.* The Court of Appeals, in *Trimble* v. *Trimble* (1976), 167 Ind. App. 600, 339 N.E.2d 614, 615, was asked to determine whether a trial court applied IC 1971, 31-1-11.5-11. That Court held:

"A reading of the record produces no conviction on our part that the trial court did not consider the above factors, only that it attributed less weight, sufficiency and credibility

to the evidence of the wife [here, John] than she [he] would have liked. . . . [W]e find that the trial court's determination of the property settlement is not inconsistent with a consideration of the . . . factors."

The same reasoning is applicable to John's sufficiency of the evidence argument.

Many of the points raised by John are very minor, e.g., the distribution of "8 cutglass wine glasses, 2 red jardinieres." We would agree that it is the general rule that a valid property distribution describes the property to be distributed. *Hardiman* v. *Hardiman* (1972), 152 Ind. App. 675, 284 N.E.2d 820. However, the maxim *de minimus non curat lex*[3] permits us to temper the need for description with a need for reason. A trial court has no responsibility to minutely divide an extensive household inventory; it follows that the decree enunciating the property distribution need not mention each set of glasses. The court does hear evidence on the total possessions of the marital partners, but phrases such as that used by the trial court in this case, "the household furnishings in her possession," are sensible and sufficient descriptions if the judge has heard evidence.

John continues his argument by alleging that certain items not owned by the parties, but rather owned by John's parents, were specifically and erroneously awarded to *him*. If the items are, in fact, owned by John's parents, it was John and his attorney who induced the error of the trial court. John's counsel asked Julia,

"Q. . . . Would you have any particular objection if those items of property were to become *his* [John's] ?

A. The driftwood lamp, the China lamp, the five gallon crock, the four gallon crock, the cherry table and the hand lawn mower?

Q. Yeah, just the six down below.

A. No, I don't have any objection." (Emphasis added.)

3. See *Stanford* v. *Stanford* (1976), 170 Ind. App. 203, 352 N.E.2d 93, 94, n. 3, where the Court held that a complaint by a husband that several small items of unspecified value were not ordered returned to him should be ignored pursuant to the maxim.

While a court may not award property not owned by the parties, *Shula* v. *Shula* (1956), 235 Ind. 210, 132 N.E.2d 612, John, the complaining party, has the capacity to correct the error by returning the items to his parents.[4]

We will not speculate as to those changes in the decree which would render it an abuse of discretion. *Newman* v. *Newman* (1976), 171 Ind. App. 202, 355 N.E.2d 867, 870. We have reviewed the property disposition, and we conclude that it is supported by the evidence.

## II.

### Child Support

Julia was awarded custody of Craig, her natural son from a prior marriage whom John had adopted. John was awarded custody of Tommy, a child adopted by both parties during the marriage. The decree of the trial court requires John to pay $55.00 per week for Craig's support; no provision was made for the support of Tommy. John objects to the amount of support awarded.[5]

IC 1971, 31-1-11.5-12(a) (Burns Supp. 1976) provides that:

"In an action pursuant to section 3(a) or (b) [subsections (a) and (b) of 31-1-11.5-3], the court may order either parent or both parents to pay any amount reasonable for support of a child, without regard to marital misconduct after considering all relevant factors including:
    (1) the financial resources of the custodial parent;
    (2) standard of living the child would have enjoyed had the marriage not been dissolved;
    (3) physical or mental condition of the child and his educational needs; and

---

4. John also contends that other items, not specifically mentioned, belong to his parents, and the court "presumably . . . intended Julia to have the items . . . ," the result of which would be contrary to law. This theory is not supported by the language used by the trial court in its judgment: ". . . [W]ife shall have . . . any and all other property not listed above that is *now owned* by the parties." (Emphasis added.)

5. John's assertion that since he is "only" the adoptive parent of Craig he is only *secondarily* liable for his support is not worthy of discussion. IC 1971, 31-3-1-9 (Burns Code Ed.). *Schwartz* v. *Schwartz* (1976), 170 Ind. App. 241, 351 N.E.2d 900.

(4) financial resources and needs of the noncustodial parent."

The evidence revealed that Tommy suffered from anxiety and hyperactivity and was undergoing therapy. John relies on this fact in asserting that Julia should not receive additional money for Craig's support when Tommy has special needs. He argues that Julia works and is able to support Craig.

. An award of child support is a discretionary act of the trial court which will not be disturbed unless an abuse of discretion is clearly shown. *Chrisman* v. *Chrisman* (1973), 156 Ind. App. 388, 296 N.E.2d 904. The Court of Appeals has no authority to weigh the evidence. *Draime* v. *Draime* (1961), 132 Ind. App. 99, 173 N.E. 2d 70.

Julia is a schoolteacher whose annual salary in 1973 was $8,640.00; John's income as an attorney during 1973 was $29,150.52. Although there was conflicting evidence as to the amounts John could expect to earn in the future, our duty is to look to the evidence which substantiates the award of support. *DeLong* v. *DeLong* (1974), 161 Ind. App. 275, 315 N.E.2d 412. Considering the differences in earnings during 1973, together with the testimony to the effect that John has some ability to control his own income,[6] we cannot say that the court abused its discretion. Where more than one child is involved, and the custody of the children is divided, a judge in his discretion, may, through support, attempt to equalize the standards of living of all children.

The amount of support is based on the child's necessities. The trial court must consider the station in life of the parties and the particular facts and circumstances in the case, including the amount of the husband's property and his ability to earn money. *Marsico* v. *Marsico* (1972), 154 Ind. App. 436,

---

6. John's income did go down during 1975, but during that year, he admittedly spent a great deal of time preparing two 41-page motions to correct errors and a 103-page brief to this Court, and compiling a 600-page transcript.

290 N.E.2d 99. Even though the trial court can look ·to the earning capacity of the wife, it is not an abuse of discretion for a trial court to ignore the mother's financial means. *Bill* v. *Bill* (1972), 155 Ind. App. 65, 290 N.E.2d 749. The best interests of the child are paramount. *Marsico, supra.* The trial court did not abuse its discretion when it awarded $55.00 per week support for Craig.

### III.

### Attorney Fees

Julia was awarded a portion of her attorney expenses incurred during the dissolution proceedings (total expenses [$2,384.71] less amount Julia paid [$1,084.71] equals award, or amount John was ordered to pay [$1,300.00]). The trial court awarded Julia's attorney an additional $1,000.00 to defray the cost of defending this appeal. John contends that the award of attorney fees to Julia constitutes an abuse of discretion.

IC 1971, 31-1-11.5-16 (Burns Supp. 1976) provides that,

"The court from time to time may order a party to pay a reasonable amount for the cost to the other party of maintaining or defending any proceeding under this chapter [31-1-11.5-1—31-1-11.5-24] and for attorney's fees, including sums for legal services rendered and costs incurred prior to the commencement of the proceedings or after entry of judgment. . . ."

This statute allows the trial court wide latitude, *DeLong, supra:* "from time to time," "prior to the commencement of the proceedings or after entry of judgment." The main guide provided in the law is "reasonable." John would have us believe that if Julia is capable of working, *any* award of attorney fees to her is patently unreasonable. Such is not the law.

". . . The trial court has broad discretion in regard to the award of attorney fees. . . . In exercising such discretion, the trial court is not strictly limited to the present *economic* circumstances of the parties but may consider the *ability* of the parties to engage in gainful employment and

to earn adequate income to comply with the court's order." (Original emphasis.) *Brown* v. *Brown* (1973), 157 Ind. App. 672, 301 N.E.2d 400, 403.

The award of the trial court as to attorneys' fees will be disturbed on appeal only where a clear abuse of discretion is demonstrated. *Northup* v. *Northup* (1972), 154 Ind. App. 469, 290 N.E.2d 501. The trial court may take judicial notice of what a reasonable attorney's fee would be, even absent any evidence in the record. *Cox* v. *Cox* (1975), 163 Ind. App. 172, 322 N.E.2d 395; *Hibbard* v. *Hibbard* (1974), 161 Ind. App. 422, 315 N.E.2d 731. Facing a situation in which attorney fees for appeal were awarded, the Second District, Indiana Court of Appeals, noted: "The trial court was familiar with the action, the amount of work which would be required on appeal, and the parties' financial situations." *Wireman* v. *Wireman* (1976), 168 Ind. App. 295, 343 N.E.2d 292, 298.

We have reviewed the record, and the same rationale is applicable here, both as to the fees awarded for the dissolution itself and for the appeal. In neither instance did the trial court place the entire burden of attorney fees on John's shoulders; Julia paid a substantial portion of the total fees. To overturn the award, a clear abuse of discretion must be evident. *Linton* v. *Linton* (1975), 166 Ind. App. 409, 336 N.E. 2d 687. No abuse of discretion has been shown.

## IV.

### Conclusion

Julia argues in her brief that John has demonstrated bad faith in this appeal because of (1) misleading statements in his brief, (2) failure to cite pertinent authority, and (3) delaying and harassing tactics. She asks this Court to assess damages against John pursuant to Indiana Rules of Procedure Appellate Rule 15(F).[7]

---

7. This is now AP. Rule 15(G):
"If the court on appeal affirms the judgment, damages may be assessed in favor of the appellee not exceeding ten per cent (10%) upon the

While we do note that John's actions have been *far from exemplary,* we are not convinced at this point that the requisite strong showing of bad faith has been made. *American S. & L. Ass'n of Hammond* v. *Hoosier State Bk.* (1975), 167 Ind. App. 43, 337 N.E.2d 486. Accordingly, Julia's prayer for relief under AP. Rule 15 (G) is denied.

We have found no abuse of discretion in the property settlement, the child support, or in the attorney fees awarded.[8]

The trial court's judgment is affirmed.

Hoffman, J., concurs.

Buchanan, J. (by designation), concurs.

NOTE.—Reported at 360 N.E.2d 41.

---

judgment, in money judgments, and in other cases in the discretion of the court; and the court shall remand such cause for execution."

8. We would remind both parties that the trial court has continuing jurisdiction to award additional attorney fees for appeal if, in its discretion, such an award is justified by the circumstances. *Inkoff* v. *Inkoff* (1974), 159 Ind. App. 239, 306 N.E.2d 132.