Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Jan 11 2013, 8:10 am

**CLERK**
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**KATHRINE D. JACK**
Law Office of Kathrine Jack
Greenfield, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| JASMINE SNOW, | ) | |
| | ) | |
| Appellant-Petitioner | ) | |
| | ) | |
| vs. | ) | No. 49A04-1205-DR-267 |
| | ) | |
| ROBERT HICKS, | ) | |
| | ) | |
| Appellee-Defendant. | ) | |
| | ) | |

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable David Shaheed, Judge
The Honorable Victoria Ransberger, Magistrate
Cause No. 49D01-1008-DR-037367

**January 11, 2013**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**VAIDIK, Judge**

## Case Summary

Jasmine Snow ("Mother") appeals the trial court's decisions regarding custody and child support in post-dissolution proceedings with her former husband, Robert Hicks ("Father"). She contends that the trial court erred in determining that Father had no arrearage and declining her request for retroactive support. She also argues that the trial court erred in calculating support and ordering the parties to share, in alternating years, the tax exemption for R.H. While we affirm the trial court's conclusions as to retroactive support, calculation of support, the alternating tax exemption, and joint legal custody, we reverse on the arrearage issue. We affirm in part and reverse in part.

## Facts and Procedural History

Mother and Father have one child together, R.H.,[1] born August 6, 2008, in California. Mother and Father separated after R.H.'s birth, and Mother relocated to Indiana. A California court dissolved the parties' marriage in May 2009. The California court did not consider any custody, child-support, or parenting-time issues.

In 2010, Father filed a petition to register the California dissolution decree and establish custody, child support, and parenting time in Marion Superior Court. The parties were ordered to participate in mediation, and although they reached a tentative agreement during mediation, Father later rejected it. The court held a preliminary hearing in July 2011. After hearing evidence about the parties' finances, the trial court ordered Father to pay $220 per week in child support.

---

[1] R.H.'s name was an issue at trial. Without Father's knowledge or consent, Mother changed the child's name from R.H., his legal name at birth, to G.L.S. The trial court determined that it was in R.H.'s best interest that his name be restored to his birth name, and we refer to the child accordingly. The child's name is not an issue on appeal.

A final hearing was held in April 2012. Mother and Father both appeared at the hearing and testified about a number of issues. The bulk of the hearing, however, related to child support and the parties' ability to communicate with one another.

Mother argued that Father had accumulated two child-support arrearages. The first arrearage calculated by Mother dated back to the 2010 filing of Father's petition to establish custody, support, and parenting time, and continued to the date of the final hearing. Mother calculated that arrearage to be $6296. However, Mother admitted that Father had paid her approximately $6400 in support outside the clerk's record, from June 2011 to September 2011. Appellant's App. p. 75-79. The second arrearage accounted only for a short period of time between the preliminary and final hearings, during which Father failed to pay support until an income-withholding order was executed. Mother calculated that arrearage to be $2356.[2] Although the parties discussed unpaid child support, neither party requested a child-support modification.

The parties also discussed who would claim the income-tax exemption for R.H. Mother claimed R.H. in 2011, as she had done in the past. The trial court sanctioned this, saying, "[I] did give her the exemption, as of the preliminary hearing in July, and so she had full and every right to claim [R.H.]." Tr. p. 136. Mother claimed she would suffer financially if Father was allowed to claim R.H. on his taxes.

Both parties also testified about their difficulty communicating with one another about R.H. Father testified that on many occasions he did not contact Mother even

_____

[2] We do not know if any of the $6400 paid to Mother outside the clerk's record from July-September 2011 reduced the arrearage that Mother calculated between the preliminary and final hearings. But we do know that the trial court found a "slight arrearage" during that period, which it did not calculate.

3

though he wanted to see R.H, and that when they discussed Father's parenting time for Christmas 2011, "it just got real ugly." *Id.* at 27. Mother testified similarly and also admitted that she failed to inform Father that R.H. had recently switched schools. The trial court acknowledged these difficulties at the close of the hearing, saying "these two can't get along to save their soles [sic], so they're going to have to do at least uptoparent.org[,][3] or something." *Id.* at 118.

The trial court entered findings and conclusions *sua sponte* in its judgment three weeks later. While the order granted Mother primary physical custody of R.H., the court ordered the parties to share joint legal custody, saying, "The parties have failed to effectively communicate in the past as to issues pertaining to [R.H.]. However, the parties now demonstrate [that] they have the ability to communicate regarding [R.H]." Appellant's App. p. 52. The court also noted that it had ordered the parties to participate in a parenting program, which Mother had recently completed. *Id.* at 52-53.

The court denied Mother's request for retroactive child support. The court explained that Father had accumulated a slight arrearage by failing to pay support after it was established by preliminary order in July 2011. *Id.* at 53. But the court also explained that the $220 per-week support obligation had failed to "provide parenting[-]time credit for Father," and did not account for transportation costs paid by Father. *Id.* at 52. Imputing a weekly income of $290 to Mother—based on full-time, minimum-wage employment—the court reduced Father's child-support obligation to $182 per week. *Id.*

---

[3] "Up to Parents" is a free, online program for divorced or divorcing parents. It is described as providing "a chance for parents to take an interactive timeout from their conflict . . . in periods of conflict and stress," and describes the differences parents may "achieve for themselves and their children when they put their conflict on hold and focused for a time on their children's needs." *See* http://www.uptoparents.org/Default.aspx (last visited Dec. 7, 2012).

The court concluded that moving forward, the parties should alternate the tax exemption for R.H. each year, with Mother claiming R.H. in 2011 and Father doing so in the coming tax year. The court noted that it had considered "the limited income that Mother presently earns" and "the tax implications" of its decision. *Id*. at 53. The court also explained that Father was required to pay ninety-five percent of his child-support obligation in each alternating year he wished to claim R.H. *Id.*

In a final paragraph, the court discussed attorney's fees and explained that due to income disparity, Father might have been ordered to pay attorney's fees to Mother. But, the court said:

> *Mother comes to the Court with unclean hands*, having interfered with Father's parenting time and having unlawfully changed the child's name. *Mother also took the tax exemption for the child despite the pending proceedings and received a significant refund which more than covered any purported arrearage* and caused Father to incur additional taxes. Each party shall pay their own attorney fees and costs.

*Id.* at 54 (emphasis added). Mother now appeals.

### Discussion and Decision

Mother challenges the portions of the trial court's judgment that pertain to child support and custody. Neither party requested findings and conclusions. Rather, the trial court entered findings and conclusions *sua sponte.* When a trial court enters special findings and conclusions *sua sponte*, the specific findings and conclusions control only as to the issues they cover, while a general judgment standard applies to any issue upon which the court has not found. *Estudillo v. Estudillo*, 956 N.E.2d 1084, 1089 (Ind. Ct. App. 2011) (citing *Yanoff v. Muncy*, 688 N.E.2d 1259, 1262 (Ind. 1997)), *reh'g. denied*. When a trial court has made findings of fact, we apply a two-tier standard of review:

5

whether the evidence supports the findings of fact, and whether the findings of fact support the conclusions thereon. *Id.* We will set aside findings only if they are clearly erroneous. *Id.* "Findings are clearly erroneous only when the record contains no facts to support them either directly or by inference." *Id.* To determine that a finding or conclusion is clearly erroneous, an appellate court's review must leave it with the firm conviction that a mistake has been made. *Id.* We neither reweigh the evidence nor assess the credibility of witnesses, but consider only the evidence most favorable to the judgment. *Tew v. Tew*, 924 N.E.2d 1262, 1264-65 (Ind. Ct. App. 2010), *trans. denied.*

We note, however, that Father did not file an appellee's brief. Under that circumstance, we do not undertake to develop the appellee's arguments. *Branham v. Varble*, 952 N.E.2d 744, 746 (Ind. 2011). Rather, we will reverse upon an appellant's prima facie showing of reversible error. *Id.*

## I. Child Support

Mother asserts four arguments that pertain to child support. She contends that the trial court erred in determining that Father had no arrearage and declining her request for retroactive support. She also argues that the trial court erred in calculating support and ordering the parties to share, in alternating years, the tax exemption for R.H.

Decisions regarding child support are within the sound discretion of the trial court. *Hicks v. Smith*, 919 N.E.2d 1169, 1171 (Ind. Ct. App. 2010), *trans. denied*. We reverse a court's determination regarding child support only if there has been an abuse of discretion or the determination is contrary to law. *Id.* An abuse of discretion occurs if

6

the trial court's decision is clearly against the logic and effect of the facts and circumstances before it. *Id.*

## A. Arrearage

Mother argues that the trial court explicitly acknowledged Father's failure to pay support, yet canceled his arrearage. Indeed, the trial court stated that Father had accumulated a "slight arrearage" by failing to pay support after it set support at $220 per week in July 2011. Appellant's App. p. 52-53. However, the court later concluded that "no arrearage is found . . . ." *Id*. at 52.

Mother claims that the only explanation for the cancellation is the court's reference to the unclean-hands doctrine. Although the trial court did not explain why it canceled Father's arrearage, it did make the following finding when discussing attorney's fees: "Mother comes to the Court with unclean hands, having interfered with Father's parenting time and having unlawfully changed the child's name. Mother also took the tax exemption for the child despite the pending proceedings and received a significant refund which more than covered any purported arrearage . . . ." *Id.* at 54. To the extent the trial court relied on either the unclean-hands doctrine or the fact that Mother claimed R.H. on her taxes in 2011, this was error.

The unclean-hands doctrine is an equitable tenet that demands one who seeks equitable relief be free from intentional misconduct in the matter before the court. *Shriner v. Sheehan*, 773 N.E.2d 833, 847-48 (Ind. Ct. App. 2002), *trans. denied.* A party cannot seek an equitable remedy where a legal remedy exists which is "as practical and efficient to the ends of justice and its prompt administration as the remedy in equity."

7

*Martin v. Heffelfinger*, 744 N.E.2d 555, 559 (Ind. Ct. App. 2001). The doctrine is not favored and should be applied with reluctance and scrutiny. *Villegas v. Silverman*, 832 N.E.2d 598, 607 (Ind. Ct. App. 2005), *reh'g denied*, *trans. dismissed*. Here, Father sought to establish child support pursuant to statute and based upon statutory factors. Mother likewise sought to establish that Father had accumulated an arrearage. Because the child-support statute allows the parties sufficient legal remedies, the unclean-hands doctrine does not apply here.

The fact that Mother claimed R.H. on her 2011 taxes is also not a basis for cancellation of Father's arrearage. Simply put, Mother was entitled to do this. The trial court acknowledged this at the final hearing: "[I] did give her the exemption, as of the preliminary hearing in July, and so she had full and every right to claim [R.H.]." Tr. p. 136. Moreover, the purpose of child support is to ensure the welfare of the child. *Billings v. Odle*, 891 N.E.2d 106, 108 (Ind. Ct. App. 2008). There was no basis for the cancellation of an arrearage expressly acknowledged by the trial court and owed to R.H. We remand for calculation of Father's precise arrearage and instruct the court to enter an order to pay that amount.

### B. Retroactive Support

Mother also argues that the trial court erred in denying her request that Father's child-support obligation be retroactive to the date he filed his petition to establish custody, child support, and parenting time. Our courts have held that an initial child-support order may be retroactive to the filing date of a petition for dissolution. *Boone v. Boone*, 924 N.E.2d 649, 652 (Ind. Ct. App. 2010) (citing *Bill v. Bill*, 155 Ind. App. 65,

8

290 N.E.2d 749 (1972)). At trial, and in her appellate brief, Mother admitted that Father paid her child support, albeit outside the clerk's record, before Father's obligation was established by the preliminary support order. Appellant's App. p. 75-79; Appellant's Br. p. 5 ("Mother additionally provided copies of certified checks, which Father paid to Mother outside the clerk's record . . . ."). From this, the trial court could reasonably conclude that retroactive support was not warranted. Mother has not shown error here.

## C. Calculation of Support

Mother also argues that the trial court erred in calculating Father's child-support obligation by failing to attribute to each party their actual weekly gross income, thus improperly deviating from the Indiana Child Support Guidelines. Specifically, Mother argues that the trial court assigned Father $1390 in weekly gross income, when in fact his weekly gross income is $1455. Mother also claims that the trial court improperly imputed $290 in weekly income to her, when her actual income is less than that amount. Mother correctly states that a trial court may deviate from the Guidelines only if it provides written findings to justify the deviation. *Clark v. Madden*, 725 N.E.2d 100, 107 (Ind. Ct. App. 2000).

It is not entirely clear what income values the trial court truly intended to use for Father. On the child-support worksheet it attached to its order, it attributes two different incomes to him. On Line 1 of the worksheet, the court says that Father's weekly gross income is $1390. *See* Appellant's App. p. 58. Two pages later in the worksheet, the court lists Father's weekly gross income as $1445, the same amount found by the court in the preliminary support order. *See id.* at 60. But the amount ordered by the court appears

9

to be based upon the $1390 weekly income, and the difference between that amount and the higher income Mother advocates for is minimal: by our calculations, using the higher amount would require Father to pay approximately one dollar and thirty cents more in weekly support. We cannot say that the trial court erred in this regard.

And as to Mother's income, the trial court imputed $290 per week to her to reflect minimum-wage employment.[4] *Id.* at 52. By her own account, though she was employed, Mother worked "not that many hours"—between twelve and twenty—and at the time of the final hearing was enrolled in one college course and attended class one evening per week. Tr. p. 103. We cannot say that attributing a minimum-wage income to Mother based on full-time employment was inappropriate.

### *D. Alternating Tax Exemption*

Mother also claims that the trial court erred by ordering her to release the tax exemption for R.H. to Father in alternating years. With respect to dependent tax exemptions, this Court has stated:

> We note at the outset that 26 U.S.C. § 152(e) (2000) automatically grants a dependency exemption to a custodial parent of a minor child but permits an exception where the custodial parent executes a written waiver of the exemption for a particular tax year. Moreover, we have previously held that a trial court under certain circumstances may order the custodial parent to sign a waiver of the dependency exemption. Furthermore, the Commentary to the Indiana Child Support Guidelines states that the Guidelines were developed without taking into consideration the award of the dependency exemption. Instead, courts are instructed to review each case on an individual basis.

---

[4] There is also a discrepancy in the child-support worksheet as to Mother's income. On the first page of the worksheet, the court lists Mother's income as $290 per week. On the third page of the worksheet, it lists her income as $206 per week, an amount found in previous support worksheets. But the trial court expressly indicated its intent to impute $290 in weekly income to Mother in its judgment. *See* Appellant's App. p. 52.

10

Nonetheless, the Guidelines recommend that, at a minimum, the following five factors be considered:

(1) the value of the exemption at the marginal tax rate of each parent;

(2) the income of each parent;

(2) the age of the child(ren) and how long the exemption will be available;

(4) the percentage of the cost of supporting the child(ren) borne by each parent; and

(5) the financial burden assumed by each parent under the property settlement in the case.

*Quinn v. Threlkel*, 858 N.E.2d 665, 675 (Ind. Ct. App. 2006) (citations omitted). When considering these factors, a trial court's equitable discretion should be guided primarily by the goal of maximizing the amount of support available to the child. *Harris v. Harris*, 800 N.E.2d 930, 941 (Ind. Ct. App. 2003), *trans. denied*. The noncustodial parent bears the burden of demonstrating the tax consequences to each parent of transferring the exemption as well as how the transfer would benefit the child. *Id.*

In ordering that the parties share the tax exemption for R.H., the trial court noted "the limited income that Mother presently earns" and the tax implications of its decision. Appellant's App. p. 53. Father earns significantly more than Mother, thus the exemption potentially has greater value to Father. *See Quinn*, 858 N.E.2d at 675 ("We need not disregard what we know about the federal tax code's progressive rate scheme; it is apparent that the exemption likely is worth considerably more to [the higher-income parent] than [the lower-income parent] . . . ."). And Father has been assigned a greater percentage of the burden of supporting R.H.—approximately eighty-three percent to

11

Mother's seventeen percent.  In light of these facts, we cannot say that the trial court abused its discretion in ordering the parties to share the tax exemption for R.H.

## II. Joint Legal Custody

Mother argues that the trial court erred in awarding the parties joint legal custody because the parties are not able to communicate with one another about their child.

Determinations regarding child custody are within the sound discretion of the trial court.  *Swadner v. Swadner*, 897 N.E.2d 966, 974 (Ind. Ct. App. 2008). We will affirm the trial court's decision in custody matters unless the court has abused its discretion. The award of joint legal custody is governed by Indiana Code section 31-17-2-15, which provides:

> In determining whether an award of joint legal custody under section 13 of this chapter would be in the best interest of the child, the court shall consider it a matter of primary, but not determinative, importance that the persons awarded joint custody have agreed to an award of joint legal custody. The court shall also consider:
>
> > (1) the fitness and suitability of each of the persons awarded joint custody;
> >
> > (2) whether the persons awarded joint custody are willing and able to communicate and cooperate in advancing the child's welfare;
> >
> > (3) the wishes of the child, with more consideration given to the child's wishes if the child is at least fourteen (14) years of age;
> >
> > (4) whether the child has established a close and beneficial relationship with both of the persons awarded joint custody;
> >
> > (5) whether the persons awarded joint custody:
> >
> > > (A) live in close proximity to each other; and
> > >
> > > (B) plan to continue to do so; and

12

(6) the nature of the physical and emotional environment in the home of each of the persons awarded joint custody.

"Therefore, trial courts must consider 'whether the parents have the ability to work together for the best interests of their children.'" *Id.* (quoting *Arms v. Arms*, 803 N.E.2d 1201, 1210 (Ind. Ct. App. 2004)). We are reluctant to reverse a trial court's conclusion that joint custody is appropriate. *Id.* (citing *Walker v. Walker*, 539 N.E.2d 509, 512 (Ind. Ct. App. 1989)). "However, we will do so when the evidence indicates 'a clear abuse of trial court discretion in that the joint custody award constitutes an imposition of an intolerable situation upon two persons who have made child rearing a battleground.'" *Id.* (quoting *Aylward v. Aylward*, 592 N.E.2d 1247, 1251 (Ind. Ct. App. 1992)).

Mother and Father testified that they had difficulty communicating with one another, a fact the trial court noted at the close of the final hearing: "these two can't get along to save their soles [sic], so they're going to have to do at least uptoparent.org[,] or something." Tr. p. 118. Although the court acknowledged the parties' troubles, it also appeared to hope that things might improve if the parties participated in a parenting program for divorced families in conflict. Mother had completed the suggested program by the time the court entered its judgment, and the Court explained that "the parties now demonstrate [that] they have the ability to communicate regarding [R.H]." Appellant's App. p. 52. We are reluctant to reverse a trial court's conclusion that joint custody is appropriate and will only do so where a joint-custody award perpetuates an intolerable, battleground-like situation. *Swadner*, 897 N.E.2d at 974. We cannot say that is the case here. The trial court did not err in determining that joint legal custody was appropriate.

Affirmed in part, reversed in part, and remanded.

BAILEY, J., and BROWN, J., concur.